## In the UNITED STATES DISTRICT COURT
### for the DISTRICT of NEW JERSEY

| | | |
|---|---|---|
| PRESTIGE INSTITUTE FOR | : | |
| PLASTIC SURGERY, P.C. | : | |
| and | : | **CIVIL ACTION** |
| KEITH M. BLECHMAN , M.D., P.C. | : | |
| on behalf of PATIENT HG | : | NO. 20-CV-00496-KM-ESK |
| *Plaintiffs* | : | |
| v. | : | |
| KEYSTONE HEALTH PLAN EAST | : | |
| and | : | |
| BLUE CROSS OF CALIFORNIA | : | |
| dba ANTHEM BLUE CROSS | : | **NOTICE OF MOTION** |
| *Defendants* | : | |

TO:   Leslie S. Howard, Esquire
Cohen Howard LLP
Suite 200
766 Shrewsbury Avenue
Tinton Falls, NJ  07724

Robert J. Axelrod, Esquire
Axelrod LLP
Suite 2800
800 Third Avenue
New York, NY    10022

Michael F. Fried, Esquire
Axelrod LLP
354 North Fourth Avenue
Highland Park, NJ  08904

Valerie Sirota, Esquire
Troutman Sanders
875 Third Avenue
New York, NY 10022

PLEASE TAKE NOTICE that on April 20, 2020, or as soon thereafter as counsel may be heard, defendant, Independence Blue Cross, LLC, shall move before the Honorable Esther Salas, at the United States District Court for the District of New Jersey, Martin Luther King Building & U.S. Courthouse, 50 Walnut Street, Newark, NJ  for an Order dismissing the action with prejudice pursuant to F.R.C.P. 12(b)(6).

PLEASE TAKE FURTHER NOTICE that in support of their motion, Defendant will rely upon the accompanying Memorandum of Points and Authorities.

PLEASE TAKE FURTHER NOTICE that a proposed form of Order is submitted with this motion.

 /s/ Gerald J. Dugan
Gerald J. Dugan, Esquire

**In the UNITED STATES DISTRICT COURT**
**for the DISTRICT of NEW JERSEY**

| | | |
|---|---|---|
| **PRESTIGE INSTITUTE FOR** | : | |
| **PLASTIC SURGERY, P.C.** | : | |
| **and** | : | **CIVIL ACTION** |
| **KEITH M. BLECHMAN , M.D., P.C.** | : | |
| **on behalf of PATIENT HG** | : | **NO. 20-CV-00496-KM-ESK** |
| *Plaintiffs* | : | |
| **v.** | : | |
| **KEYSTONE HEALTH PLAN EAST** | : | |
| **and** | : | |
| **BLUE CROSS OF CALIFORNIA** | : | |
| **dba ANTHEM BLUE CROSS** | : | |
| *Defendants* | : | |

**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**
**PURSUANT TO F.R.C.P. 12(B)(6) OF**
**DEFENDANT, KEYSTONE HEALTH PLAN EAST**

Defendant, Keystone Health Plan East hereby moves the Court to dismiss the action

pursuant to F.R.C.P. 12(b)(6), and in support thereof will rely upon the attached Memorandum of

Points and Authorities.

Dugan, Brinkmann, Maginnis and Pace

By:     /s/ Gerald J. Dugan
Gerald J. Dugan, Esquire
Attorney for Defendant,
Keystone Health Plan East

-2-

**In the UNITED STATES DISTRICT COURT**
**for the DISTRICT of NEW JERSEY**

| | | |
|---|---|---|
| **PRESTIGE INSTITUTE FOR** | : | |
| **PLASTIC SURGERY, P.C.** | : | |
|    and | : | **CIVIL ACTION** |
| **KEITH M. BLECHMAN , M.D., P.C.** | : | |
|    on behalf of PATIENT HG | : | **NO. 20-CV-00496-KM-ESK** |
| *Plaintiffs* | : | |
|    v. | : | |
| **KEYSTONE HEALTH PLAN EAST** | : | |
|    and | : | |
| **BLUE CROSS OF CALIFORNIA** | : | |
| **dba ANTHEM BLUE CROSS** | : | |
| *Defendants* | : | |

**O R D E R**

And now, this _____ day of _____ 2020, upon consideration of the

Motion of Defendant, Keystone Health Plan East, to dismiss Plaintiffs' Amended Complaint, it is

hereby ORDERED and DECREED, that the Motion is GRANTED.  Plaintiffs' Amended

Complaint is hereby dismissed with prejudice.

BY THE COURT:

_____,J.
KEVIN MCNULTY, J.

**In the UNITED STATES DISTRICT COURT**
**for the DISTRICT of NEW JERSEY**

| | | |
|---|---|---|
| **PRESTIGE INSTITUTE FOR** | : | |
| **PLASTIC SURGERY, P.C.** | : | |
|    and | : | **CIVIL ACTION** |
| **KEITH M. BLECHMAN , M.D., P.C.** | : | |
|    on behalf of PATIENT HG | : | **NO. 20-CV-00496-KM-ESK** |
|       *Plaintiffs* | : | |
| **v.** | : | |
| **KEYSTONE HEALTH PLAN EAST** | : | |
|    and | : | |
| **BLUE CROSS OF CALIFORNIA** | : | |
| **dba ANTHEM BLUE CROSS** | : | |
|       *Defendants* | : | |

**MEMORANDUM OF POINTS and AUTHORITIES IN SUPPORT OF T HE**
**MOTION TO DISMISS PLAINTIFFS' AMENED COMPLAINT**
**PURSUANT TO F.R.C.P. 12(B)(6) OF**
**DEFENDANT, KEYSTONE HEALTH PLAN EAST**[1]

Gerald J. Dugan, Esquire
Dugan, Brinkmann, Maginnis and Pace
gjdugan@dbmplaw.com
Suite 1400
1880 John F. Kennedy Blvd.
Philadelphia, PA 19103
215-563-3500
Attorneys for Defendant,
Keystone Health Plan East

---

[1]  The correct corporate name of Keystone is Keystone Health Plan East, Inc.

# TABLE OF CONTENTS

I.      The Claims at Issue................................................................................1

II.     The Standards Governing a Motion to Dismiss.....................................2

III.    Plaintiffs Lack Standing to Bring the Claims........................................3

        A.      Plaintiffs Cannot Proceed as Assignees....................................4

        B.      Plaintiffs Cannot Proceed as an Authorized Representative.....................5

IV.     Keystone Is Not the Plan Nor Its Issuer................................................6

V.      The Plausibility Challenge.....................................................................9

        A.      Plaintiffs Fail to Identify the Plan Provision Entitling Them to Relief...................9

        B.      No Claim May Be Asserted Pursuant to the Regulation or Statutes.....................10

                i.      The Regulation..........................................................10

                ii.     The WHCRA............................................................11

VI.     Conclusion and Relief Requested.........................................................14

## TABLE OF AUTHORITIES

Cases                                                                          Page

Advanced Orthopedics & Sports Medicine Institute v. Anthem Blue Cross Life & Health Ins. Co., 2018 Westlaw 6603650 (D.N.J. 2018)...................................................................4

Aerocare Medical Transport System, Inc. v. International Brotherhood o f Electrical Workers Local 1249, 2018 Westlaw 6622192 (N.D.N.Y. 2018)....................................................6

Alessi v. Raybestos-Manhattan, Inc.,
        451 U.S. 504, 101 S. Ct. 1895, 68 L. Ed.2d 402 (1981)....................................12

Alliancemed LLC v. Aetna Life Ins. Co., 2017 Westlaw 394524 (D. Ariz. 2017).........................6

American Orthopedic & Sports Medicine v. Independence Blue Cross Blue Shield,
        890 F.3d 445 (3d Cir. 2018).........................................................................4, 6

Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009).......................2, 10, 14

Atlantic Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.,
        2018 Westlaw 1420496 ( D.N.J. 2018)..............................................................10

Bell Atl. Corp. v. Twombly,
        550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007)........................2, 10, 14

Bloomfield Surgical Center v. CIGNA Health & Life Insurance Co.,
        2017 Westlaw 2304642 (D.N.J. 2017)...............................................................10

Curtis Wright Corp. v. Schoonejongen,
        514 U.S. 73, 115 S. Ct. 1223, 131 L. Ed.2d 94 (1995).......................................12

Enami v. Empire Healthchoice Assurance, Inc., 2019 Westlaw 4597521 (D.N.J. 2019)................9

Enlightened Solutions, LLC v. United Behavioral Health,
        2018 Westlaw 6381883 (D.N.J. 2018)................................................................4

Estate of Kenyon v. L&M Healthcare Health Reimbursement Account,
        404 F. Supp.3d 627 (D. Conn. 2019)..................................................................8

Hopkin v. Blue Cross of Idaho Health Service, 2018 Westlaw 1123864 (D. Idaho 2018).............6

Howard v. Coventry Health Care of Iowa, Inc., 293 F.3d 442 (8th Cir. 2002)...............................13

| Cases | Page |
|---|---|

In re Lipitor Antitrust Litigation, 868 F.3d 231 (3d Cir. 2017),
 cert. denied sub nom, Pfizer, Inc. v. Rite Aid Corp.,
 138 S. Ct. 983, 200 L. Ed.2d 300 (2018)..........................................................................3

Infoneuro Group v. Aetna Life Ins. Co., 2019 Westlaw 3006549 (C.D. Cal. 2019).....................6

Kaul Sanjeev MD FACS, LLC v. Northern New Jersey Teamsters Benefit Plan,
 2018 Westlaw 3019883 (D.N.J. 2018)...............................................................................10

Krauss v. Oxford Health Plans, Inc., 517 F.3d 614 (2d Cir. 2008)................................................12

Le Jon-Twin El v. Marino, 2017 Westlaw 1591856 (D.N.J. 2017)................................................3

Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.,
 2016 Westlaw 2939164 (S.D.N.Y. 2016).............................................................................6

Memorial Hermann Health System v. Pennwell Corp. Medical and Vision Plan,
 2017 Westlaw 6561165 (S.D. Tex 2017)..............................................................................6

Menkowitz v. Blue Cross Blue Shield of Illinois, 2014 Westlaw 5392063 (D.N.J. 2014).............5

Millennium Healthcare of Clifton, LLC v. Aetna Life Ins. Co.,
 2019 Westlaw 7498667 (D.N.J. 2019).............................................................................9-10

New Jersey Spine & Orthopedics, LLC v. Novo Nordisk, Inc. Employee Health Plan,
 2018 Westlaw 3377173 (D.N.J. 2018)..................................................................................4

Neurosurgical Associates o f NJ v. Aetna, Inc., 2019 Westlaw 851280 (D.N.J. 2019)..................4

Pegram v. Hedrich, 530 U.S. 211, 120 S. Ct. 2143, 147 L. Ed.2d 164 (2000)................................

Professional Orthopedic Associates, PA v. Excellus Blue Cross Blue Shield,
 2015 Westlaw 4387981 (D.N.J. 2015)................................................................................12

Reiter v. Anthem Blue Cross Blue Shield, 2018 Westlaw 3472627 (D.N.J. 2018)....................4-5

Shah v. Horizon Blue Cross Blue Shield of New Jersey,
 2018 Westlaw 3410025 (D.N.J. 2018)..................................................................................4

Shah v. Horizon Blue Cross/Blue Shield, 2016 Westlaw 4499551 (D.N.J. 2016).......................10

Cases                                                                              Page

United States ex rel. Bookwalter v. UPMC, 946 F.3d 162 (3d Cir. 2019)......................................12

University Spine Center v. Aetna, Inc., 774 Fed. Appx. 60 ( 3d Cir. 2019)...................................5

University Spine Center v. Anthem Blue Cross of California,
        2020 Westlaw 814181 (D.N.J. 2020)......................................................................3, 9

University Spine Center v. Anthem Blue Cross Blue Shield,
        2019 Westlaw 4855439 (D.N.J. 2019).........................................................................4


Statutes

29 U.S.C. § 1002(1).................................................................................................................7

29 U.S.C. § 1132(a).....................................................................................................2, 3, 6, 13

29 U.S.C. § 1133.....................................................................................................................10

29 U.S.C. § 1185b..................................................................................................................11

42 U.S.C. § 1395nn(b)(4)........................................................................................................12

N.J.S.A. § 17:48-6b.................................................................................................................13


Regulations

29 C.F.R. § 2560.503-1........................................................................................................5, 10


Rules
12(b)(6)..................................................................................................................................2, 3, 9

## I.       The Claims at Issue

The amended complaint alleges that in May and November 2018, Drs. Joseph

Tamburrino and Keith M. Blechman performed breast reconstruction surgery on Patient HG at

Doylestown Hospital in Bucks County, Pennsylvania.  Drs. Tamburrino and Blechman are

affiliated with plaintiff, Prestige Institute for Plastic Surgery, P.C.[2]

Plaintiffs assert that they submitted bills to Keystone, a local Blue Cross Blue Shield

entity,[3] for $162,334.61 and $174,200.00, and received a payments of $5,643.97 and $3,220.19

for the May surgery, and a bill for $80,590.51, and payment of $5,663.98 for the November

surgery.  The bills were paid by Anthem Blue Cross, which issued the policy for the employee

benefit plan in which patient HG was a participant or beneficiary.

The only allegation in the amended complaint relating to Keystone is essentially that the

surgery, which occurred in Bucks County, Pennsylvania, occurred in Keystone's territory within

the Blue Cross and Blue Shield Association, and that plaintiffs were required to send their bills to

Keystone to determine if plaintiffs were in Keystone's network.[4]  Anthem would then process

and pay the bills based upon plaintiffs' status as network providers of Keystone, or as out of

network providers, if they did not participate Keystone's network.  It is alleged that Keystone

---

[2]  The amended complaint is attached with the Sirota declaration.

[3]  Keystone is an entity affiliated with Independence Blue Cross that issues health
maintenance organization ("HMO") plans in Pennsylvania.

[4]  Members of the Blue Cross and Blue Shield Association, including Anthem and
Keystone, provide to members what is known as the Blue Card ® Program.  A member that
accesses services outside of her own carrier's geographic service area may obtain such services
as in-network services, notwithstanding the provider's lack of a direct contract with her specific
Blue Cross or Blue Shield carrier.  This essentially expands each Blue Cross and Blue Shield
entity's network to include the networks of all other participating Blue Cross and Blue Shield
entities.  The Blue Card® Program is explained in Anthem's plan at p. 126, Sirota Declaration.

acted as Anthem's agent.[5]  It is not alleged that Keystone issued any plan or policy, made any payment decisions, considered any internal appeals or made any payments.

While the amended complaint recites a number of different, allegedly controlling statutes and regulations, the amended complaint makes a single claim against each defendant – a claim for unpaid benefits pursuant to the Employee Retirement Income Security Act of 1974, "ERISA." In particular, section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which permits a plan participant or beneficiary to recover benefits due under the plan.[6]

Keystone seeks dismissal of the amended complaint on the basis that plaintiffs lack standing, and Keystone did not issue or administer any employee benefit plan.  Further, the amended complaint fails the plausibility standards of <u>Twombly</u>[7] and <u>Iqbal</u>,[8] and to the extent that plaintiffs seek redress based upon other federal or statute statutes and regulations identified in the complaint, those statutes and regulations do not support independent claims.

## II.    The Standards Governing a Motion to Dismiss

The standards governing a motion to dismiss pursuant to F.R.C.P. 12(b)(6) are well-established.

> Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted.  The defendant, as the moving party, bears the burden of showing that no claim has been stated.  For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff....

---

[5]  Amended complaint at ¶¶ 24-25.

[6]  Amended Complaint at ¶¶ 76-82.

[7]  <u>Bell Atl. Corp. v. Twombly,</u> 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007).

[8]  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009).

> "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." ...  Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." ...  That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." ....  While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility."

Le Jon-Twin El v. Marino, 2017 Westlaw 1591856 (D.N.J. 2017).

Although a motion to dismiss pursuant to F.R.C.P. 12(b)(6) is normally confined to the allegations of the pleading, and may not consider matters extraneous to the pleading, documents" integral to or explicitly referred to in the complaint" may also be considered.  Here, the plan documents and forms are integral to plaintiffs' claims and may be considered.  See In re Lipitor Antitrust Litigation, 868 F.3d 231, 249 (3d Cir. 2017), cert. denied sub nom, Pfizer, Inc. v. Rite Aid Corp., 138 S. Ct. 983, 200 L. Ed.2d 300 (2018); University Spine Center v. Anthem Blue Cross of California, 2020 Westlaw 814181 (D.N.J. 2020).

## III.    Plaintiffs Lack Standing to Bring the Claims

ERISA confers rights and standing to sue only upon plan participants or beneficiaries.[9] So, plaintiffs must establish their right to sue pursuant to ERISA, as they are neither plan participants or beneficiaries.  The Anthem plan/policy provides:

> **Benefits Not Transferable.** Only the *member* is entitled to receive benefits under this *plan*. The right to benefits cannot be transferred.  ...  Any assignment of benefits, even if assignment includes the providers right to receive payment, is generally void.[10]

---

[9]  29 U.S.C. § 1132(a).

[10]  Anthem plan/policy at pp. 130 & 131, Sirota Declaration.

Keystone asserts that this anti-assignment clause, along with an inadequate and insufficient authorized representative designation, preclude plaintiffs' standing, and requires that this action be dismissed.

      A.    <u>Plaintiffs Cannot Proceed as Assignees</u>

This anti-assignment provision precludes assignments of the plan's benefits.  <u>American Orthopedic & Sports Medicine v. Independence Blue Cross Blue Shield</u>, 890 F.3d 445, 448 (3d Cir. 2018).  Since the decision of the Third Circuit in <u>American Orthopedic</u>, the courts of this district  have unanimously concluded that a valid an anti-assignment provision, such as the one in the Anthem plan/policy, precludes out of network providers such as plaintiffs from pursuing ERISA claims as assignees of their patients.

The post-<u>American Orthopedic</u> cases include:  <u>New Jersey Spine & Orthopedics, LLC v. Novo Nordisk, Inc. Employee Health Plan</u>, 2018 Westlaw 3377173 (D.N.J. 2018) (Linares, J.); <u>Shah v. Horizon Blue Cross Blue Shield of New Jersey</u>, 2018 Westlaw 3410025 (D.N.J. 2018) (Hillman, J.); <u>Advanced Orthopedics & Sports Medicine Institute v. Anthem Blue Cross Life & Health Ins. Co.</u>, 2018 Westlaw 6603650 (D.N.J. 2018) (Shipp, J.); <u>Enlightened Solutions, LLC v. United Behavioral Health</u>, 2018 Westlaw 6381883 (D.N.J. 2018) (Shipp, J.); <u>Neurosurgical Associates o f NJ v. Aetna, Inc.</u>, 2019 Westlaw 851280 (D.N.J. 2019) (Hayden, J.); <u>University Spine Center v. Anthem Blue Cross Blue Shield</u>, 2019 Westlaw 4855439 (D.N.J. 2019) (Hayden, J.).

Both this Court and the Third Circuit have recently determined that an anti-assignment provision is enforceable.  <u>Reiter v. Anthem Blue Cross Blue Shield</u>, 2018 Westlaw 3472627

(D.N.J. 2018) (McNulty, J. ); University Spine Center v. Aetna, Inc., 774 Fed. Appx. 60 ( 3d Cir.

2019).  As plaintiffs do not have standing as assignees, this action must be dismissed.

     B.    <u>Plaintiffs Cannot Proceed as an Authorized Representative</u>

     In addition to alleging that plaintiffs are HG's assignee, the amended complaint also

alleges that plaintiffs are acting as HG's authorized representative.[11]  29 C.F.R. § 2560. 503-

1(b)(4) requires employee benefit plans governed by ERISA to have reasonable claims

procedures "that do not preclude an authorized representative of a claimant from acting on behalf

of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination."[12]

This regulation, however, does not require or provide that an authorized representative may or

must be allowed to bring suit pursuant to ERISA on behalf of the plan participant or beneficiary.

     This omission from the regulation as to the bringing of an action deprives the authorized

representative from so acting.  In Menkowitz v. Blue Cross Blue Shield of Illinois, 2014 Westlaw

5392063 (D.N.J. 2014), Judge Thompson held that the provision applied to"internal submissions

of claims and appeals on behalf of the beneficiaries, not civil lawsuits in federal courts."  Accord

Professional Orthopedic Associates, PA v. Excellus Blue Cross Blue Shield, 2015 Westlaw

4387981 (D.N.J. 2015) (Wolfson, J.).

---

    [11]  In paragraph 60 of the amended complaint, plaintiffs allege that HG appointed as her
Designated Authorized Representative "each of my Providers and ... lawyers (including the Law
Offices of Cohen and Howard) ... to pursue ... litigation or otherwise under any Federal or State
law with respect to payment for services ...."

    [12]  Subsection (b)(4) permits a health care professional to act an authorized representative,
but only if the claim involves "urgent care."  There is no allegation in the complaint that the
services provided were for "urgent care."  See also 29 C.F.R. § 2560-503.1(m)(1).

District courts in other jurisdictions have reached the same or similar results.  Mbody

Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc., 2016 Westlaw 2939164

(S.D.N.Y. 2016) (anti-assignment provision precluded standing as authorized representative).  In

the following decisions, the courts held that the regulation relates solely to internal claims

procedures and appeal and does not confer standing on authorized  representative to bring an

ERISA action in federal court.  Alliancemed LLC v. Aetna Life Ins. Co., 2017 Westlaw 394524

(D. Ariz. 2017); Memorial Hermann Health System v. Pennwell Corp. Medical and Vision Plan,

2017 Westlaw 6561165 (S.D. Tex 2017), Hopkin v. Blue Cross of Idaho Health Service, 2018

Westlaw 1123864 (D. Idaho 2018); Aerocare Medical Transport System, Inc. v. International

Brotherhood o f Electrical Workers Local 1249, 2018 Westlaw 6622192 (N.D.N.Y. 2018) and

Infoneuro Group v. Aetna Life Ins. Co., 2019 Westlaw 3006549 (C.D. Cal. 2019).

The designation of plaintiffs as HG's authorized representative to bring this action,

however, does not confer standing.  As more particularly explained by the Third Circuit in

American Orthopedic, an anti-assignment provision limits transfer of rights.  Here the authorized

representative designation attempted to make such a transfer of HG's rights.  Such a transfer,

however, is precluded by the anti-assignment terms of the plan, and like the assignment, is

ineffective to transfer any of HG's rights under the plan/policy or as a participant or beneficiary

in an ERISA-governed employee welfare plan to plaintiffs or their counsel.

### IV.    Keystone Is Not the Plan Nor Its Issuer

Section 532 of ERISA, 29 U.S.C. § 1132(a)(1)(B) provides that a participant or

beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to

enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the

terms of the plan ...."  29 U.S.C. § 1002(1) includes the definitions of what constitutes a plan.

> The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

Here, Keystone did not issue a plan or policy, but only provided its network of providers to Anthem, expanding that network, and the concomitant favorable rates and terms to both Anthem and the plan participant or beneficiary.  However, there is no allegation in the amended complaint that Keystone issued the plan/policy, was the plan sponsor or plan administrator, or made any decisions as to whether to pay the providers' claims or how much to pay.

As the amended complaint sets forth in detail,[13] Anthem would pay the claim as an in network claim if the provider plaintiffs participated in Keystone's network, as the surgery took place in Pennsylvania.  However, because plaintiffs did not have a contract with Keystone or any Blue Cross or Blue Shield entity, Anthem's payments were based upon its contractual rates for out of network providers.

While provider plaintiff suggests that this results in a contraction of Anthem's network, the exact opposite is true.  Pursuant to the Blue Card® program, essentially any provider who has a contract with a Blue Cross/Blue Shield entity will be an in network provider for every Blue Cross/Blue Shield entity, thereby expanding the network.  Indeed, it would make no sense for

---

[13]  Amended complaint at 16-25.

Anthem, located in California, to enter into provider agreements with providers located in Cherry Hill, New Jersey, who perform surgery in Bucks County, Pennsylvania.  Instead, by borrowing the networks of all other Blue Cross/Blue Shield entities, Anthem provided its members with a robust national network, through the Blue Card® program.  But by borrowing Keystone's network, Keystone did not become a plan issuer or provide benefits to HG.  Anthem did not transfer its status as issue of the plan/policy to Keystone by virtue of the Blue Card® program.

The plan/policy recognized Keystone's limited role, and reaffirmed Anthem's role as the issuer of the plan/policy.

> Under the Blue Card® Program, when you receive covered services within the geographic area served by a Host Blue, we will still fulfill our contractual obligations.[14]

In <u>Estate of Kenyon v. L&M Healthcare Health Reimbursement Account</u>, 404 F. Supp.3d 627 (D. Conn. 2019), the district court provided an extensive analysis of why a host plan under the Blue Card® program could not be liable, including the same language that is in Anthem's plan/policy that the home plan will fulfill its contractual obligations.  *Id*. at 632.

The amended complaint also makes clear that Anthem paid the claims and determined the internal appeals.[15]  There is no allegation of any decision-making on the part of Keystone, which merely transferred the plaintiffs' billing to Anthem with advice as to whether plaintiffs participated in Keystone's network, which they did not.[16]  However, it is clear from the amended complaint that plaintiffs fully and completely understand Keystone's role as the host plan, and

---

[14]  Anthem plan/policy at p. 126, Sirota declaration.

[15]  Amended complaint at ¶¶ 34 to 40.

[16]  Amended complaint at ¶¶ 23-25.

that a host plan provides no coverage and makes no claim decisions or determinations, which is left solely to the home plan – Anthem.

As a result, plaintiffs full awareness that Anthem, and not Keystone, issued the plan/policy and made all payment and appeal decisions, clearly evidences bad faith on the part of plaintiffs in joining Keystone, a mere bystander, to this action.  Certainly, plaintiffs have not stated a plausible claim against Keystone, and the amended complaint must be dismissed with prejudice as to Keystone.

## V.      The Plausibility Challenge

Notwithstanding plaintiffs' lack of standing, the amended complaint is also subject to dismissal pursuant to F.R.C.P. 12(b)(6) as it fails to state a plausible claim.  Although the complaint is replete with facts relating to how and when the claim was paid, and the explanations of the payments made and the appeals filed, nowhere in the complaint is there any allegation of why plaintiffs are entitled to any or additional benefits due under the plan/policy.  Instead, the amended complaint only asserts that plaintiffs believe they should have been paid more.

### A.      Plaintiffs Fail to Identify the Plan Provision Entitling Them to Relief

As this Court explained in University Spine Center v. Anthem Blue Cross of California, 2020 Westlaw 814181 (D.N.J. 2020), where plaintiffs have failed to plead a plausible claim for additional reimbursement under the plan by reference to specific plan provisions, the complaint must be dismissed:  "It is the Plaintiff's burden of proof to have the plan documents and cite to specific plan provisions when filing a civil complaint to obtain ERISA benefits."  (Citation omitted).  See also Enami v. Empire Healthchoice Assurance, Inc., 2019 Westlaw 4597521 (D.N.J. 2019) (complaint must identify plan provision to meet plausibility standard); Millennium

Healthcare of Clifton, LLC v. Aetna Life Ins. Co., 2019 Westlaw 7498667 (D.N.J. 2019), (the complaint must allege the relevant provisions of the plan and state why such provisions make benefits 'actually due).

The amended complaint does not identify the plan provisions that entitle plaintiffs to additional reimbursement, and under Twombly and Iqbal, the amended complaint fails to state plausible claim, and must be dismissed.  Similarly, for the reasons stated in Section IV, supra, the amended complaint also fails to state a plausible claim against Keystone as the host plan, as its sole role was to submit the billing to and "lend" its network to Anthem.

      B.      No Claim May Be Asserted Pursuant to the Regulation or Statutes

          i.      The Regulation

To the extent that plaintiffs assert they may make a claim pursuant to 29 C.F.R. § 2560-503.1 for failing to have reasonable claims procedures, they are incorrect.  There is no private cause of action pursuant to 29 C.F.R. § 2560-503.1.  Kaul Sanjeev MD FACS, LLC v. Northern New Jersey Teamsters Benefit Plan, 2018 Westlaw 3019883 (D.N.J. 2018); Atlantic Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co., 2018 Westlaw 1420496 (D.N.J. 2018); Bloomfield Surgical Center v. CIGNA Health & Life Insurance Co., 2017 Westlaw 2304642*3 (D.N.J. 2017).  See Shah v. Horizon Blue Cross/Blue Shield, 2016 Westlaw 4499551 (D.N.J. 2016) (collecting cases). In addition, the section of ERISA that allows for this CFR provision is section 503 (29 U.S.C. § 1133), which required the Secretary of Labor to promulgate regulations that relate to procedures for the denial of benefits.  The claim made here does not relate to the denial of benefits, but relates solely to the amount of payment.  Simply stated, plaintiffs may not assert a claim pursuant to the regulation.

     ii.    <u>The WHCRA</u>

The complaint is replete with references to the Women's Health and Cancer Rights Act, 29 U.S.C. § 1185b, ("WHCRA").  There is no dispute that the WHCRA provides that group health plan that cover mastectomy must also cover breast reconstruction.  However, Keystone contests and disputes plaintiffs' allegations that the WHCRA governs how much must be paid for coverage of breast reconstruction following mastectomy.

Subsection (c)(2) of the WHCRA provides that a group health plan may not "penalize or otherwise reduce or limit the reimbursement of an attending provider, or provide incentives (monetary or otherwise) to an attending provider, to induce such provider to provide care to an individual participant or beneficiary in a manner inconsistent with this section."  Plaintiffs allege in the amended  complaint that Anthem reimbursed plaintiffs incorrectly"[17] and inappropriately applied out of network rates.[18]

It appears that plaintiffs are asserting that the provision that a group health plan may not "otherwise reduce ... the reimbursement to an attending provider" requires the group health plan to pay the provider's billed charge.  This is an improper reading of the statute.  The primary clause cited is followed by the clause that the plan may not induce providers to provide care "inconsistent with this section."  For example, if a provider was paid a greater fee for a mastectomy when there was no reconstruction, but a lesser fee when reconstruction was to occur, such a reimbursement scheme would likely run afoul of the WHCRA.

---

[17]  Amended complaint at ¶ 35.

[18]  Amended complaint at ¶ 42.

Similarly, there are health maintenance organization plans, ("HMOs") that are maintained and operated by physicians or groups of physicians, where in essence, the HMO does not merely reimburse or pay a fee to a provider, but also provides the care.  Such a plan was described by the Supreme Court in Pegram v. Hedrich, 530 U.S. 211, 120 S. Ct. 2143, 147 L. Ed.2d 164 (2000) ("health maintenance organization (HMO) owned by physicians providing prepaid medical services to participants whose employers contract ... for coverage ..."). *Id*. at 211, 120 S. Ct. at 21444.  Where the physicians own the HMO, and also provide the care, there could be financial incentives that would dissuade providers from providing post-mastectomy reconstruction.  This is the mischief that the WHCRA was enacted to correct.  It was not enacted to require any particular reimbursement or require that the provider's billed charge could not be changed or reduced depending upon the level of benefits offered in the plan/policy.[19]  Further, the Supreme Court has ruled on more than one occasion that ERISA leaves the creation and level of benefits provided to the "private parties creating the plan."  Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 511, 101 S. Ct. 1895, 1900, 68 L. Ed.2d 402 (1981); Curtis Wright Corp. v. Schoonejongen, 514 U.S. 73, 78, 115 S. Ct. 1223, 1228, 131 L. Ed.2d 94 (1995).

This question was taken up in Krauss v. Oxford Health Plans, Inc., 517 F.3d 614 (2d Cir. 2008), where the Second Circuit considered the issue of the level of payment required under the WHCRA, and concluded that the WHCRA requires only that group health plans cover

---

[19]  The WHCRA is not alone in its admonition that the delivery of care should not be based upon financial incentives to providers.  For example, the Stark Act, 42 U.S.C. § 139 5nn(b)(4), precludes Medicare claims for certain health services provided pursuant to a referral made by a doctor with whom the entity has a financial relationship.  Such financial relationships may be fertile ground for fraud and similar mischief.  See United States ex rel. Bookwalter v. UPMC, 946 F.3d 162 (3d Cir. 2019).

reconstruction after mastectomy, but does not specify the level of benefits that must be provided. As the court ruled "Congress ... was not concerned with the precise details of the coverage to be provided." Id. at 626-27.[20]

Finally, there is the decision of the Eighth Circuit in Howard v. Coventry Health Care of Iowa, Inc., 293 F.3d 442 (8th Cir. 2002), that there is no private cause of action under the WHCRA.  Primary among the court's reasons was the ERISA is a comprehensive remedial scheme, and ERISA has "six carefully integrated civil enforcement provisions in section 502(a) (29 U.S.C. § 1132(a)).  As ERISA already includes sufficient enforcement mechanisms, no further additions, such as a private cause of action under the WHCRA, was required or permissible.

Thus, it is clear that the allegations relating to the WHCRA also state no claim.[21]  The amended complaint acknowledges that HG's breast reconstruction was covered, albeit not at the level plaintiffs believed were adequate.  Plaintiffs only disagreement is that they are unsatisfied with the amount of the payment that Anthem negotiated with the employer for its employees and beneficiaries who are plan participants.  Further, these allegations do not state a separate claim or save the amended complaint from failing to meet the plausibility standard.

_____

[20]  The other provision of the WHCRA dealing with providers, subsection (d), states that [n]othing in this section shall be construed to prevent a group health plan ... from negotiating the level and type of reimbursement with a provider ...."  This subsection does not require group health plans to negotiate with providers, but merely permits plans to agree with providers as to reimbursement levels, such as would be the case for a network provider, who has a contract with the insurer or plan as to the reimbursement permitted for certain services.

[21]  The same is true of the allegations made as to New Jersey law.  Neither the New Jersey statute, N.J.S.A. § 17: 48-6b, nor the Bulletin issued by the New Jersey Department of Banking and Insurance, referenced in paragraph 73-76 of the complaint, require a certain level of benefits.

**VI.**  **Conclusion and Relief Requested**

The policy/plan precludes assignments such as the one upon which plaintiffs rely to bring this action.  Plaintiffs designation as an authorized representative to receive payment does not provide plaintiffs with the right to commence this action.  Plaintiffs lack standing, and the amended complaint fails to meet the plausibility standards of <u>Twombly</u> and <u>Iqbal</u>.  The amended complaint must be dismissed with prejudice as to Keystone.

Respectfully submitted,

Dugan, Brinkmann, Maginnis and Pace

By:     /s/ Gerald J. Dugan
Gerald J. Dugan, Esquire
Attorney for Defendant,
Keystone Health Plan East, Inc.

**In the UNITED STATES DISTRICT COURT
for the DISTRICT of NEW JERSEY**

| | | |
|---|---|---|
| **PRESTIGE INSTITUTE FOR PLASTIC** | : | |
| **SURGERY, P.C. and** | : | |
| **KEITH M. BLECHMAN, M.D., P.C. on behalf** | : | |
| **of PATIENT HG** | : | |
| *Plaintiffs* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 20-CV-00495-ES-CLW** |
| **HORIZON BLUE CROSS** | : | |
| **BLUE SHIELD OF NEW JERSEY** | : | |
| **and** | : | |
| **INDEPENDENCE BLUE CROSS** | : | |
| *Defendants* | : | |

**CERTIFICATION OF SERVICE**

I, Gerald J. Dugan, Esquire, do hereby certify that a copy of the foregoing was served on

all counsel through the ECF system, this 25th day of March 2020, as follows:

Leslie S. Howard, Esquire
Cohen Howard LLP
Suite 200
766 Shrewsbury Avenue
Tinton Falls, NJ  07724

Robert J. Axelrod, Esquire
Axelrod LLP
Suite 2800
800 Third Avenue
New York, NY  10022

Michael F. Fried, Esquire
Axelrod LLP
354 North Fourth Avenue
Highland Park, NJ  08904

Michael E. Holzhapfel, Esquire
Becker LLC
Plaza II, Suite 1500
354 Eisenhower Parkway
Livingston, NJ  07039

 /s/ Gerald J. Dugan
Gerald J. Dugan, Esquire