TROUTMAN SANDERS LLP
Valerie Sirota
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6067
*Attorneys for Defendant Anthem Blue*
*Cross of California d/b/a Anthem Blue Cross*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PRESTIGE INSTITUTE FOR PLASTIC SURGERY, P.C. and KEITH M. BLECHMAN, M.D., P.C., on behalf of PATIENT HG,<br><br>                   *Plaintiffs*,<br><br>        v.<br><br>KEYSTONE HEALTHPLAN EAST, BLUE CROSS OF CALIFORNIA d/b/a ANTHEM BLUE CROSS, and SIEMENS CORPORATION GROUP INSURANCE AND FLEXIBLE BENEFITS PROGRAM,<br><br>                   *Defendants*. | Civil Action No. 2:20-cv-00496-KM-ESK |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BLUE CROSS OF CALIFORNIA d/b/a ANTHEM BLUE CROSS'S MOTION TO DISMISS THE AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ......................................................................... 1

ARGUMENT ..................................................................................................... 7

    I.      THE STANDARD OF REVIEW ......................................................... 7

    II.    PLAINTIFFS LACK STANDING TO ASSERT CLAIMS UNDER ERISA ................................................................................................. 8

    III.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER § 502 (A)(1)(B ......................................................................................... 12

CONCLUSION ................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
106 F.3d 11 (2d Cir. 1997)...............................................................................11

*Aetna Health Inc. v. Srinivasan*,
No. A-2035-14T2, 2016 WL 3525298 (N.J. Super. Ct. App. Div. June 29,
2016) ...................................................................................................................2

*Alston v. Parker*,
363 F.3d 229 (3d Cir. 2004).............................................................................8

*Am. Orthopedics & Sports Med. v. Independence Blue Cross Blue Shield*,
890 F.3d 445 (3d Cir. 2018)..............................................................8, 9, 10, 11

*Arcand v. Brother Int'l Corp.*,
673 F. Supp. 2d 282 (D.N.J. 2009) ....................................................................2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................7

*Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*,
No. 17-cv-4600 (FLW), 2018 U.S. Dist. LEXIS 47181 (D.N.J. Mar. 22, 2018) .............13, 14

*Baldwin Cty. Welcome Ctr. v. Brown*,
466 U.S. 147 (1984)............................................................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................7, 13

*Cohen v. Horizon Blue Cross Blue Shield of N.J.*,
No. 15-4525 (JLL) (JAD), 2015 U.S. Dist. LEXIS 140344 (D.N.J. Oct. 15,
2015) ...................................................................................................................9

*Emami v. Quinteles IMS*,
No. 17-3069 (JLL), 2017 U.S. Dist. LEXIS 154774 (D.N.J. Sept. 21, 2017) ........................10

*Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*,
No. 10-cv-04911-EJD, 2011 U.S. Dist. LEXIS 75433 (N.D. Cal. July 13,
2011) .................................................................................................................14

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009)............................................................................7

*Giordano v. Thompson*,
564 F.3d 163 (2d Cir. 2009).................................................................................12

*Howard v. Coventry Health Care of Iowa, Inc.*,
158 F. Supp. 2d 937 (S.D. Iowa 2001), *aff'd* 293 F.3d 442 (8th Cir. 2002)............................15

*Krauss v. Oxford Health Plans, Inc.*,
517 F.3d 614 (2d Cir. 2008).................................................................................16

*Majied v. New York City Dep't of Educ.*,
No. 16-cv-5731(JMF), 2018 WL 333519 (S.D.N.Y. Jan. 8, 2018) ................................13

*Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice Hmo, Inc.*,
No. 13cv6551, 2016 WL 2939164 (S.D.N.Y. May 19, 2016).......................................12

*McDonough v. Horizon BCBS*,
No. 09-cv-571, 2009 U.S. Dist. LEXIS 93642 (D.N.J. Oct. 7, 2009) .............................16

*Middlesex Surgery Ctr. v. Horizon*,
No. 13-112 (SRC), 2013 U.S. Dist. LEXIS 27542 (D.N.J. Feb. 28, 2013) ......................11

*N. Jersey Brain & Spine Ctr. v. Aetna*,
801 F.3d 369 (3d Cir. 2015)..................................................................................8

*N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*,
798 F.3d 125 (2d Cir. 2015).................................................................................13

*Neitzke v. Williams*,
490 U.S. 319 (1989)..........................................................................................7

*Neuroaxis Neurosurgical Assocs., PC v. Costco Wholesale Co.*,
919 F. Supp. 2d 345 (S.D.N.Y. 2013).....................................................................8

*Nyame v. Bronx Leb. Hosp. Ctr.*,
No. 08-cv-9656, 2010 U.S. Dist. LEXIS 33949 (S.D.N.Y. Mar. 31, 2010) .....................16

*Oberschmidt v. Belile*,
No. 12-cv-03750, 2013 WL 444334 (N.D. Ala. Feb. 5, 2013)....................................11

*Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*,
388 F.3d 393 (3d Cir. 2004)..................................................................................8

*Peacock Med. Lab, LLC v. UnitedHealth Grp., Inc.*,
No. 14-81271, 2015 U.S. Dist. LEXIS 61306 (S.D. Fla. May 11, 2015) .......................11

*Prof'l Orthopedic Associates, PA v. Excellus Blue Cross Blue Shield*,
No. 14–6950, 2015 WL 4387981 (D.N.J. Jul. 15, 2015).........................................12

*Pruter v. Local 210's Pension Tr. Fund*,
   No. 15-cv-1153, 2016 U.S. Dist. LEXIS 30499 (S.D.N.Y. Feb. 8, 2016),
   *vacated and remanded on other grounds*, 858 F.3d 753 (2d Cir. 2017)..................................14

*Rahul Shah, M.D. v. Horizon Blue Cross Blue Shield*,
   No. 15–8590, 2016 WL 4499551 (D.N.J. Aug. 25, 2016).......................................................15

*Roby v. Ocean Power Techs., Inc.*,
   No. 14-cv-3799, 2015 U.S. Dist. LEXIS 42388 (D.N.J. Mar. 17, 2015) ...............................11

*Specialty Surgery of Middletown v. Aetna*,
   No. 12-4429 (JLL), 2014 U.S. Dist. LEXIS 85371 (D.N.J. June 24, 2014)............................9

*Univ. Spine Ctr. v. Aetna, Inc.*,
   No. 17-7825 (JLL), 2017 U.S. Dist. LEXIS 209101 (D.N.J. Dec. 19, 2017)..........................9

*Univ. Spine Ctr. v. Anthem Blue Cross Blue Shield*,
   No. 18-01103, 2018 U.S. Dist. LEXIS 86994 (D.N.J. May 21, 2018).....................................9

*Univ. Spine Ctr. v. Anthem Blue Cross Blue Shield*,
   No. 18-2912 (ES), 2018 U.S. Dist. LEXIS 209996 (D.N.J. Dec. 13, 2018) ...........................9

*Univ. Spine Ctr. v. Blue Shield of Cal.*,
   No. 17-8673 (JLL), 2017 U.S. Dist. LEXIS 190684 (D.N.J. Nov. 16, 2017) .........................9

*Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of N.J.*,
   262 F. Supp. 3d 105 (D.N.J. 2017) ......................................................................................10

*Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of N.J.*,
   No. 17-193 (JLL), 2017 U.S. Dist. LEXIS 204633 (D.N.J. Dec. 12, 2017)............................9

**Statutes, Rules and Other Authorities**

29 U.S.C. § 1132(a)(1) and (a)(3).................................................................................................8

29 U.S.C. § 1132(a)(1)(B)............................................................................................................13

29 U.S.C. § 1132(c)(1)...................................................................................................................8

29 U.S.C. § 1185b(a) ...................................................................................................................15

29 U.S.C. § 1185b(e)(2)................................................................................................................15

ERISA § 502(a).....................................................................................................................4, 5, 8

ERISA § 502(a)(1)(B).................................................................................................6, 12, 13, 14

29 C.F.R. § 2560.503–1 ....................................................................................................4, 12, 15

Federal Rules of Civil Procedure Rule 12(b)(6) ........................................................................1, 7

Rule 8(a)....................................................................................................................................7, 16

This Memorandum of Law is respectfully submitted on behalf of Defendant Blue Cross Of California d/b/a Anthem Blue Cross ("Anthem") in support of its Motion to Dismiss the Amended Complaint[1] (the "Motion to Dismiss") of Plaintiffs Prestige Institute for Plastic Surgery, P.C. ("Prestige") and Keith M. Blechman, M.D. P.C. ("Dr. Blechman") on behalf of patient HG, (collectively, "Plaintiffs"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP").

## PRELIMINARY STATEMENT

This action arises out of the dissatisfaction of two non-contracted healthcare providers who were displeased with the level of reimbursement received from the health insurer who covered the patient. Plaintiff Prestige Institute for Plastic Surgery, P.C. an out-of-network medical practice owned by unnamed plaintiff Dr. Joseph F. Tamburrino, and Plaintiff Dr. Keith M. Blechman,[2] bring this action asserting one claim against Anthem under the Employee

---

[1] A true and correct copy of the Amended Complaint is attached as **Exhibit A** to the concurrently filed Declaration of Valerie Sirota (hereafter referred to as the "Sirota Decl.").

[2] An "out-of-network" medical provider typically means the provider (*i.e.*, the doctor) does *not* have a contract with Community concerning rates of reimbursements under the providers' patients' health benefits plans. As a matter of healthcare industry practice, medical providers that are "in-network" vis-à-vis a health benefits plan have a contract with the plan's administrator while conversely "out-of-network" providers do not. Typically, the in-network provider's contract contains pre-negotiated amounts that the in-network provider agrees to accept from the administrator as a full payment for the provider's services rendered to the plan's members/beneficiaries. By contrast, when a plan's member/beneficiary uses the services of an out-of-network medical provider, the benefits available to the member/beneficiary are substantially reduced and the member/beneficiary is expected to incur out-of-pocket expenses for a portion of the out-of-network provider's billed charges. As Judge Kugler recognized in *Shah v. Blue Cross Blue Shield of N.J.*, No. 16-cv-9011, 16-cv-9405, 16-cv-2413, 16-cv-8704 (D.N.J. May 17, 2017),

> ...if people could go out of network and then the doctors, the out of network doctors could get paid a hundred percent starting with dollar one, no doctor would ever agree to become an in network doctor, and that would have a profound effect on the insurance premiums that everyone has to pay for health insurance.

Retirement Income Security Act, 29 U.S.C. § 1001, *et seq*. ("ERISA")[3] for recovery of additional payment for medical services purportedly rendered to Plaintiffs' patient, H.G. (the "Patient")[4] under the Patient's health benefits plan.  Plaintiffs' Amended Complaint, however, is comprised of vague and conclusory allegations and is subject to dismissal.

As a preliminary matter, Plaintiffs have not (and cannot) state a claim for additional medical benefits under ERISA.  In fact, Plaintiffs fail to allege why, as out-of-network medical

---

S*ee also Distinction between in-network and out-of-network providers*, 8 Bus. & Com. Litig. Fed. Cts. § 87:28, Am. Bar Assoc. (4th ed.) ("A threshold consideration with respect to reimbursement claims, from a provider perspective, is whether the provider is 'in-network' —that is, has contracted with the insurer to provide services to members (insured patients) at pre-negotiated rates as set by contract—or 'out-of-network'—that is, has not contracted with the insurer and, therefore, [the out-of-network provider] is not contractually guaranteed payment for services provided to members.")  In other words:

> an out-of-network provider . . . usually means the doctor and patient will confer regarding a price [for a medical service], insurance companies . . . will pay a certain percentage of the rate in accordance with the policy ***between it and its insured***, and ***the patient*** will be balance billed [by the out-of-network medical provider] for the rest.

*Aetna Health Inc. v. Srinivasan*, No. A-2035-14T2, 2016 WL 3525298, at *1 (N.J. Super. Ct. App. Div. June 29, 2016).  Thus, as a matter of health insurance industry practice, out-of-network providers "balance bill" their patients for the services rendered, thereby charging the patients for the difference between the amount the patient's health insurance benefits plan covers for a particular procedure and the amount the out-of-network provider charged for that procedure.

[3]      The Plan, as referenced throughout the Amended Complaint, is attached to the Declaration of Frances Schultz (hereafter referred to as the "Schultz Decl.") as **Exhibit A**. "A court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Arcand v. Brother Int'l Corp*., 673 F. Supp. 2d 282, 291 (D.N.J. 2009). Here, the Plan is specifically and repeatedly referenced in the Amended Complaint, therefore the Court may consider it.  *See* Sirota Decl., Ex. A, ¶¶ 15, 23, 24, 30, 40-44, 51, 57, 62-63, 65, 70, 74, 83-84.

[4]      For the patient's privacy and for compliance with the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Anthem abbreviates the patient's name and refers to her as "H.G."

providers, they are entitled to more than what is allowed under the terms of the controlling health benefits plan. Indeed, Plaintiffs' boiler-plate complaint does little more than allege that Anthem failed to reimburse Plaintiffs for the entire amount of their billed charges. That is not enough. As Judge Kugler recognized in *Shah v. Blue Cross Blue Shield of N.J.*, No. 16-cv-9011, 16-cv-9405, 16-cv-2413, 16-cv-8704 (D.N.J. May 17, 2017),

> ...if people could go out of network and then the doctors, the out of network doctors could get paid a hundred percent starting with dollar one, no doctor would ever agree to become an in network doctor, and that would have a profound effect on the insurance premiums that everyone has to pay for health insurance.

On this basis alone, Plaintiffs' Amended Complaint is ripe for dismissal. However, Plaintiffs' Amended Complaint also fails for other, just as egregious, reasons set forth more fully below.

With respect to the allegations, the Amended Complaint asserts that Plaintiffs are out-of-network healthcare providers. *See* Sirota Decl., Ex. A, ¶ 6. Specifically, Prestige is a medical practice located in Cherry Hill, New Jersey owned and led by Dr. Joseph F. Tamburrino, M.D., an unnamed plaintiff in this action. *Id.,* ¶ 12. Dr. Keith M. Blechman, M.D. is an out of network doctor located in New York, New York. *Id.,* ¶ 13. Neither Prestige, Dr. Tamburrino nor Dr. Blechman have a contract with Anthem; rather, Plaintiffs bring this action as the alleged assignees and/or attorneys-in-fact of Plaintiffs' patient, H.G. *Id.,* ¶¶ 6, 58-63. The Patient is a member of the Che Services health benefits plan (the "Plan"). *See Id.* ¶ 2; *See* Schultz Decl., Ex. A.

In the Amended Complaint, Plaintiffs allege that Drs. Tamburrino and Blechman, acting as co-surgeons, provided medical services to the Patient on May 30, 2018, and that Dr. Tamburrino provided medical services to the Patient on November 19, 2018 (collectively, the "Services"). *See* Sirota Decl., Ex. A, ¶ 5. Plaintiffs further allege that the Services performed for the benefit of H.G. were covered by the Plan. *Id.* ¶¶ 30, 64, 65. Plaintiffs also allege that in connection with the

3

Services, a bill for $417,125.13 was submitted to Keystone, but that Defendants, collectively, only reimbursed $17,748.24 for the Services, "leaving an unreimbursed amount of $399,376.89, or 96% of the total amount **as the Patient's liability**." *Id.,* ¶ 7 (emphasis added).

Plaintiffs claim to have engaged in and exhausted the Plan's administrative appeals seeking additional reimbursement, without success.[5] *Id.*, ¶¶ 39-46, 57. Plaintiffs now purport to bring this lawsuit in a direct capacity as alleged assignees of the Patient's benefits, and in a derivative capacity as the Patient's "Authorized Representative." *Id.*, ¶¶ 58-63.

The Amended Complaint alleges that Plaintiffs received an "Assignment of Benefits" from the Patient (the "Assignment"), which included a provision that renders Plaintiffs the Patient's "Designated Authorized Representative."[6] Plaintiffs contend that the Assignment confers standing on Plaintiffs to pursue an ERISA § 502(a) claim on Patient's behalf. *Id.*. The Amended Complaint acknowledges that the Plan contains an anti-assignment provision, which precludes and prevents the Patient from assigning her rights to benefits to Plaintiff, except in certain circumstances. *Id.,* ¶¶ 62-63. Specifically, the Plan states:

> Any assignment of benefits, even if assignment includes the providers right to receive payment, is generally void. For example, if you go to a *participating provider* that is a *hospital* or facility at which, or as a result of which, you receive covered non-*emergency services* from a *non-participating provider* such as a radiologist, anesthesiologist, or pathologist, an assignment of benefits to such *non-*

---

[5]      Paragraphs 68-75 of the Amended Complaint cite to 29 C.F.R. § 2560.503-1, which is one of ERISA's implementing regulations which governs, *inter alia*, information that a plan administrator must provide in an adverse benefit determination, and the administrative procedures a plan must maintain to allow for appeals of adverse benefit determinations. The Amended Complaint does not, however, plead a claim under the regulation, and, as such, although Anthem disputes that it violated the regulation (or is even subject to the regulation in this context), the Amended Complaint's reference to the regulation is immaterial because Anthem does not argue failure to exhaust administrative remedies on this motion.

[6]      The Court may consider the Assignment as part of this motion because the Amended Complaint specifically refers to it.

> *participating provider* will be permitted. Any payments for the assigned benefits fulfill our obligation to you for those services. We will pay *non-contracting hospitals* and other providers of service directly when *emergency services* and care are provided to you or one of your *family members*.

Schultz Decl., Ex. A, p. 131 (emphasis in original).

As stated in the Plan, it is the responsibility of the Patient, not Anthem, to reimburse the out-of-network provider for any amount that the provider bills above the allowed amount. *See Id.*, p. 21.  Ultimately, the thrust of Plaintiffs' claim is that the Plan should have reimbursed Plaintiffs in full for their billed charges. Sirota Decl., Ex. A, ¶¶ 55, 83-86.  Plaintiffs' underlying theory of the case is that because the services involve breast reconstruction incident to mastectomy, Plaintiffs should have been paid the billed charges, notwithstanding anything else the Plan has to say about how benefits are normally calculated. *Id.*, *passim*. The Amended Complaint contains a lengthy, non-factual legal summary of the Women's Health and Cancer Rights Act ("WHCRA"), which requires plans to cover breast reconstruction incident to mastectomy in a manner consistent with coverage for other benefits under the plan, and prohibits plans from excluding coverage for breast reconstruction incident to mastectomy as a "cosmetic procedure." *Id.* ¶¶ 27-31. Plaintiffs' claims ultimately boil down to an assertion that, because breast reconstruction incident to mastectomy cannot, under federal law, be excluded from coverage as a cosmetic procedure, and because Drs. Tamburrino and Blechman have impressive credentials, the Plan should have paid Plaintiffs' full billed charges, regardless of how the Plan may define benefits for other covered services. Plaintiffs contend that the difference between what Plaintiffs billed and what it received constitutes the "benefit due" under ERISA § 502(a). *Id.*, ¶ 55.

As to the procedural background, on January 15, 2020, Plaintiffs filed a Complaint in the United States District Court for the District of New Jersey, located at index number 2:20-cv-00496. On February 5, 2020, Plaintiffs filed the Amended Complaint and a Notice of Voluntary Dismissal,

dismissing Siemens Corporation Group from the action. [Dkts. 11-13]. On March 10, 2020, the undersigned filed a letter request for an extension of time to respond to the Amended Complaint, which was granted. [Dkts. 21-22].

Anthem submits this Motion to Dismiss the Amended Complaint for numerous reasons. **First**, Plaintiffs lack standing to bring a claim for benefits as they are not proper beneficiaries under the Plan. As explained more fully herein, the Plan contains an unambiguous anti-assignment provision, which, under firmly-established case law, forecloses Plaintiffs from asserting derivative standing as an "assignee" under ERISA § 502(a)(1)(B). Plaintiffs' attempt to skirt its jurisdictional defect by asserting that it has standing pursuant to a Power of Attorney is as transparent as it is improper. Courts in this District are clear that a power of attorney is not a work-around for a medical provider to avoid an anti-assignment clause.

**Second**, to the extent Plaintiffs contend they have standing to pursue claims under the Plan, Plaintiffs fail to sufficiently state a claim for which relief can be granted. The Amended Complaint must be dismissed as it fails to state a claim under ERISA § 502(a)(1)(B) because it does not tie Plaintiffs' demand for additional reimbursement to any specific Plan term. ERISA § 502(a)(1)(B) allows a participant or beneficiary to recover benefits due "under the terms of his Plan." It is well-established that if a complaint fails to identify which "terms" of the plan actually require payment of the benefits sought, the complaint fails to state a claim. The Amended Complaint contains no such allegations.

For these reasons and those that follow, Plaintiffs' Amended Complaint should be dismissed, with prejudice, as Plaintiffs' claims against Anthem are incurable.

## ARGUMENT

### I.   THE STANDARD OF REVIEW

Under the FRCP's pleading standards, Rule 8(a)(2) requires a statement of the claim including the pleader's asserted legal theory of liability and the factual grounds upon which it rests. *See Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149–50 n.3 (1984) ("[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests") (quotation marks and citation omitted). "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326-327 (1989) (noting this procedure "streamlines litigation by dispensing with needless discovery and factfinding."). In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court articulated the standard of review by which complaints must be scrutinized on a Rule 12(b)(6) motion, setting forth that a court must dismiss a complaint, or part thereof, that fails to state a claim upon which relief can be granted. *See also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (citations omitted).

To survive a Rule 12(b)(6) motion to dismiss, the Supreme Court stressed that a complaint can withstand dismissal only if it states "sufficient factual matter, [when] accepted as true… 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570). Accordingly, the Supreme Court disavowed a notice pleading standard and shifted the federal courts to "a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." *Fowler v.*

*UPMC Shadyside*, 578 F.3d at 210. In addition, dismissal of a complaint with prejudice is appropriate if amendment would be inequitable or futile. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

Here, the Amended Complaint should be dismissed in its entirety and with prejudice as against Anthem.

## II.   PLAINTIFFS LACK STANDING TO ASSERT CLAIMS UNDER ERISA

The Amended Complaint asserts a claim for benefits under ERISA § 502(a).  ERISA, however, limits the parties who can bring such claims to plan "participants" and "beneficiaries." 29 U.S.C. § 1132(a)(1) and (a)(3); 29 U.S.C. § 1132(c)(1). ERISA confers no direct rights upon medical providers. *See Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004).

ERISA jurisprudence does allow derivative provider standing to assert ERISA claims where the provider (or doctor) obtains a *valid* assignment of benefits from his/her patient. *See N. Jersey Brain & Spine Ctr. v. Aetna*, 801 F.3d 369 (3d Cir. 2015).  As to whether the purported assignment does indeed constitute a valid, enforceable assignment under ERISA, courts draw upon general principles of contract law.  *See Neuroaxis Neurosurgical Assocs., PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 351-352 (S.D.N.Y. 2013) (collecting cases).  Moreover, while contracts are generally freely assignable, the contracting parties are free to prohibit assignments in the contract itself – a principle which courts readily extend to ERISA cases. *Id.*  The Third Circuit, like every other Circuit that has considered this issue, has held that unambiguous anti-assignment clauses in ERISA health benefits plans are enforceable, and preclude out-of-network medical providers from asserting derivative ERISA standing as their patients' "assignees." *See Am. Orthopedics & Sports Med. v. Independence Blue Cross Blue Shield*, 890 F.3d 445 (3d Cir. 2018). In addition, courts in this District have held that plaintiff-providers seeking to assert claims as

assignees of benefits must allege facts detailing the contents and scope of the assignments they purport to hold.  *See, e.g., Specialty Surgery of Middletown v. Aetna*, No. 12-4429 (JLL), 2014 U.S. Dist. LEXIS 85371, at *9 (D.N.J. June 24, 2014) ("In the absence of any evidence tending to show the existence of a valid assignment, the Court is compelled to dismiss the claims relating to [the patients] for lack of standing.") ("*Specialty Surgery*"); *see also*, *Cohen v. Horizon Blue Cross Blue Shield of N.J.*, No. 15-4525 (JLL) (JAD), 2015 U.S. Dist. LEXIS 140344, at *7-8 (D.N.J. Oct. 15, 2015).  For example, in *Cohen*, the court held that the plaintiffs' complaint was deficient because it failed "to include any of the specific language of the assignment, nor [did it] include the assignment of benefit document itself."  *Id.*, at *7.  The court also noted that "plaintiffs have not established the existence of 'properly assigned claims' to satisfy their burden of showing that they have standing to sue under ERISA."  *Id.* (quoting *Prof'l Orthopedic Assocs., PA v. Excellus Blue Cross Blue Shield*, No. 14-6950, 2015 U.S. Dist. LEXIS 91815, at *5 (D.N.J. July 15, 2015)).

The Third Circuit recognizes that anti-assignment provisions strip plaintiff-providers of derivative or statutory standing to assert ERISA claims for benefits.  *See Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 453 (3d Cir. 2018) (holding that "anti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable") ("*American Ortho*").  And, post-*American Ortho*, courts in this District confirm the same.  *See Univ. Spine Ctr. v. Anthem Blue Cross Blue Shield*, No. 18-2912 (ES), 2018 U.S. Dist. LEXIS 209996 (D.N.J. Dec. 13, 2018); *Univ. Spine Ctr. v. Anthem Blue Cross Blue Shield*, No. 18-01103, 2018 U.S. Dist. LEXIS 86994, at *6-7 (D.N.J. May 21, 2018); *Univ. Spine Ctr. v. Aetna, Inc.*, No. 17-7825 (JLL), 2017 U.S. Dist. LEXIS 209101 (D.N.J. Dec. 19, 2017); *Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of N.J.*, No. 17-193 (JLL), 2017 U.S. Dist. LEXIS 204633, at *7-8 (D.N.J. Dec. 12, 2017); *Univ. Spine Ctr. v. Blue Shield of Cal.*, No. 17-8673 (JLL), 2017 U.S.

Dist. LEXIS 190684, at *7-8 (D.N.J. Nov. 16, 2017); *Emami v. Quinteles IMS*, No. 17-3069 (JLL), 2017 U.S. Dist. LEXIS 154774, at *6-7 (D.N.J. Sept. 21, 2017); *Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of N.J.*, 262 F. Supp. 3d 105 (D.N.J. 2017).   Based on the foregoing, the controlling anti-assignment provision in the Plan is fatal to Plaintiff's claim against Anthem, and further amendment is futile.   As such, the Amended Complaint should be dismissed in its entirety and with prejudice.

The Amended Complaint also alleges standing via a Power of Attorney ("POA").   *See* Sirota Decl., Ex. A, ¶ 60-61. Plaintiffs assert that a purported POA allows them to circumvent the anti-assignment provisions in the Plan and accomplish their objective of recovering out-of-network benefits from Anthem.   This argument is not new. Out-of-network providers in this District utilize POAs as the mechanism of choice to attempt evading anti-assignment clauses in health benefits plans.   This trendy litigation strategy springs from a misinterpretation by such providers of the Third Circuit's decision in *American Orthopedics*.   In *American Orthopedics*, the alleged written assignment of benefits contained language purporting to state that the patient also granted the out-of-network provider a limited power of attorney to recover the payment on his behalf through an arbitration or lawsuit. *American Orthopedics*, 890 F.3d at 448.   In the closing pages of its opinion, the Third Circuit commented that while unambiguous anti-assignment clauses foreclose third-party derivative standing as an "assignee," a third-party may, ***in appropriate circumstances***, prosecute an action for benefits through a valid, duly-executed power of attorney.   *See American Orthopedics*, 890 F.3d at 454-455.   Although the purported POA at issue in *American Orthopedics* was defective and the provider had waived its right to rely upon the POA language in any case, the Third Circuit illustrated the possible appropriate circumstances in which a POA might be effective: (a) a plan member becomes incompetent or temporarily incapacitated and must rely on

attorneys-in-fact to protect his interests and (b) instances where deployed service members are temporarily unavailable to look after their own interests and must rely on agents. *Id*. These examples are inapplicable here.

The *American Orthopedics* decision *does not* remotely fit the alleged fact pattern of this case. Here, the Court is not presented with allegations of a patient who is incapacitated or unavailable to prosecute her own health benefits claims. Indeed, in no way are Plaintiffs executors or guardians who have filed a lawsuit on behalf of the patient because of lack the capacity to do so herself. In addition, it is settled law that lawsuits brought by an attorney-in-fact **must be filed in the name of the principal (H.G.), not the agent (Plaintiffs)**, and for the principal's benefit, **not the benefit of the agent(s)**. *See, e.g.*, *Middlesex Surgery Ctr. v. Horizon*, No. 13-112 (SRC), 2013 U.S. Dist. LEXIS 27542, at *10-11 (D.N.J. Feb. 28, 2013) (holding that grant of a power of attorney is "the opposite" of an assignment of benefits, and that such a grant does not entail "a full transfer of rights"); *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17-18 (2d Cir. 1997) ("The grant of a power of attorney, however, is not the equivalent of an assignment of ownership; and, standing alone, a power of attorney does not enable the grantee to bring suit in his own name"); *Peacock Med. Lab, LLC v. UnitedHealth Grp., Inc.*, No. 14-81271, 2015 U.S. Dist. LEXIS 61306, at *9 (S.D. Fla. May 11, 2015) ("[A] power of attorney is insufficient to give a plaintiff standing to pursue an action in his or her own name"). Indeed, a power of attorney confers no independent standing on the agent to sue in his own name. *See, e.g.*, *Advanced Magnetics, Inc.*, 106 F.3d at 18; *Roby v. Ocean Power Techs., Inc.*, No. 14-cv-3799, 2015 U.S. Dist. LEXIS 42388, at *30-31 (D.N.J. Mar. 17, 2015); *Peacock Med. Lab, LLC*, 2015 U.S. Dist. LEXIS 61306, at *9; *Oberschmidt v. Belile*, No. 12-cv-03750, 2013 WL 444334 at *2 (N.D. Ala. Feb. 5, 2013) ("[S]tanding alone, a power of attorney does not enable the grantee to bring suit in his own name.").

11

Here, Plaintiffs impermissibly bring this Amended Complaint under their own names seeking recovery of additional payment allegedly due to the Patient for their own personal gain.   Plaintiffs' alleged POA is improper and cannot afford Plaintiffs standing.

To the extent Plaintiffs allege they have standing as "Authorized Representative[s]," such allegation is similarly unavailing.   This designation refers to 29 C.F.R. 2560.503-1(b)(4), which allows an authorized representative of a claimant to act on the claimant's behalf in pursuing an internal administrative appeal of an adverse benefit decision. It is well-established, however, that this regulation applies to *internal* administrative appeals only, not to federal lawsuits brought after those appeals are exhausted, and that the regulation confers no independent standing on providers and cannot be used to override a valid anti-assignment provision. *See Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice Hmo, Inc.*, No. 13cv6551, 2016 WL 2939164, at *6 (S.D.N.Y. May 19, 2016); *Prof'l Orthopedic Associates, PA v. Excellus Blue Cross Blue Shield*, No. 14–6950, 2015 WL 4387981 (D.N.J. Jul. 15, 2015).

Accordingly, Plaintiffs' Amended Complaint should be dismissed in its entirety and with prejudice.

## III.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER § 502(a)(1)(B)

Plaintiffs' Amended Complaint should be dismissed due to Plaintiffs' failure to state a claim for which relief can be granted.   To prevail on a § 502(a)(1)(B) claim, "a plaintiff must show that (1) the plan is covered by ERISA, (2) plaintiff is a participant or beneficiary of the plan, and (3) plaintiff was wrongfully denied [benefits] owed under the plan." *Giordano v. Thompson*, 564 F.3d 163, 168 (2d Cir. 2009) (internal citations omitted).   In *1199SEIU Nat'l*, 697 F. App'x 39, 41, the Second Circuit affirmed the district court's dismissal of a complaint and held that the plaintiffs had not "plausibly stated a claim for relief under ERISA § 502(a)(1)(B)" because the "complaint alleges that the [defendant] is required to pay the 'usual, customary and reasonable

rates' for services rendered by the out-of-network providers . . . but it fails to identify any provision in the plan documents requiring the [defendant] to pay such rates." (citing *Guerrero v. FJC Sec. Servs.*, 423 F. App'x 14, 17 (2d Cir. 2011) ("[T]o the extent that [plaintiff] sought to recover benefits owed to him under a plan pursuant to § 502(a)(1)(B), his allegations were so vague that he did not suggest any basis for relief.")); *see also N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 135 (2d Cir. 2015) (affirming dismissal of Section 1132(a)(1)(B) claim where complaint failed to "satisfy the *Twombly* pleading standard" by not "identify[ing the] patients' plans or the terms of their plans"); *Majied v. New York City Dep't of Educ.*, No. 16-cv-5731(JMF), 2018 WL 333519 (S.D.N.Y. Jan. 8, 2018) (dismissing plaintiff's § 502(a)(1)(b) claim for wrongful denial of benefits because "[s]uch barebones allegations are insufficient to state a claim"). Plaintiff fails to state a claim to meet the ERISA pleading standards articulated by *1199SEIU* and its predecessors.

A recent decision from the District of New Jersey is also illustrative. In *Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-cv-4600 (FLW), 2018 U.S. Dist. LEXIS 47181 (D.N.J. Mar. 22, 2018) ("*Atl. Plastic*"), the court analyzed the pleading requirements necessary to assert an ERISA claim. The court, in the context of dismissing the plaintiffs' claims (**and citing to 1199SEIU**), noted the following:

> The Court finds that, even accepting as true the allegations in the Complaint, Plaintiffs have failed to allege sufficient facts upon which to state a plausible claim for wrongful denial of benefits under § 502(a)(1)(B). Significantly, the plain language of § 502(a)(1)(B) requires a plaintiff to demonstrate his entitlement to 'benefits due to him *under the terms of his plan*.' 29 U.S.C. § 1132(a)(1)(B) (emphasis added). To that end, the Third Circuit has emphasized that, 'to assert an action to recover benefits under ERISA, a plaintiff must demonstrate that he or she [has] a right to benefits that is legally enforceable against the plan.' *Saltzman v. Indep. Blue Cross*, 384 F. App'x 107, 111 (3d Cir. 2010) (quoting *Hooven*, 465 F.3d at 574). Here, Plaintiffs' threadbare allegation that Defendants violated § 502(a)(1)(B) by failing to pay the 'usual and customary charge' for the Procedure, without any concomitant allegation that the Plan obligated Defendants to pay for

> out-of-network medical services in accordance with the 'usual and customary' rate, is fatal to their claim for unpaid benefits.

*Id.* at *29 (emphasis in original).  The reasoning in *Atl. Plastic* similarly applies here.

Likewise, the Amended Complaint contains no factual allegations plausibly demonstrating Plaintiffs' entitlement to relief.  *See Pruter v. Local 210's Pension Tr. Fund*, No. 15-cv-1153, 2016 U.S. Dist. LEXIS 30499, at *9 (S.D.N.Y. Feb. 8, 2016), *vacated and remanded on other grounds*, 858 F.3d 753 (2d Cir. 2017) (dismissing 502(a)(1)(b) claim because "Plaintiffs cite no authority—from the Plan or otherwise… and the Court finds none upon a review of the Plan."); *Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*, No. 10-cv-04911-EJD, 2011 U.S. Dist. LEXIS 75433, at *13 (N.D. Cal. July 13, 2011) ("To state a claim under [§ 502(a)(1)(B)], a plaintiff must allege facts that establish the existence of an ERISA plan as well as *the provisions of the plan that entitle it to benefits*." (emphasis added)).

As discussed *supra*, under the terms of the Plan, payments for out-of-network services will generally be based on the Plan's out-of-network rate, unless federal or state law requires otherwise. *See* Sirota Decl., Ex. A, ¶ 42.  Absolutely nothing in the Plan documents' pertinent sections mandate that the Plan pay 100% of whatever charges Plaintiffs submit as an out-of-network benefit for the Patient's services. Accordingly, the Amended Complaint fails to sufficiently plead a claim under ERISA § 502(a)(1)(B). *See, e.g., Pruter v. Local 210's Pension Tr. Fund*, No. 15 Civ. 1153, 2016 U.S. Dist. LEXIS 30499 (S.D.N.Y. Feb. 8, 2016) (dismissing 502(a)(1)(B) claim because "Plaintiffs cite no authority—from the Plan or otherwise for the proposition that Plaintiffs' past service credits were converted into future service credits upon being fully funded, and the Court finds none upon a review of the Plan.").

The Amended Complaint attempts to justify Plaintiffs' demand for full billed charges by making blanket allegations that those charges should be paid because Drs. Tamburrino and

14

Blechman have respectable credentials, and because the WHCRA requires a plan to cover breast reconstruction incident to a mastectomy. Obviously, the operative doctor's education and background have no bearing on the quantum of benefits a plan must pay. Nor does the WHCRA confer a "blank check" upon Plaintiffs. Preliminarily, the WHCRA does not provide for a stand-alone cause of action, nor did Congress, in enacting the WHCRA, "inten[d] to create…a remedy supplemental to remedies available within ERISA." *Howard v. Coventry Health Care of Iowa, Inc.*, 158 F. Supp. 2d 937, 941 (S.D. Iowa 2001), *aff'd* 293 F.3d 442 (8th Cir. 2002); *see also Rahul Shah, M.D. v. Horizon Blue Cross Blue Shield,* No. 15–8590, 2016 WL 4499551, at *12 (D.N.J. Aug. 25, 2016) (finding that 29 C.F.R. § 2560.503–1 does not give rise to a private right of action). Thus, the WHCRA does not carve out any special exceptions to ERISA's ordinary rules of the game insofar as a participant or beneficiary's right to benefits is concerned. *See id*. at 942-943. Indeed, the statute expressly states that it shall not affect or modify ERISA's provisions with respect to group health plans. 29 U.S.C. § 1185b(e)(2).

Substantively, the WHCRA provides that an insurer who provides a plan participant with benefits in connection with a mastectomy and breast reconstruction shall also provide coverage for: (1) all stages of reconstruction of the breast on which the mastectomy has been performed; (2) surgery and reconstruction of the other breast to produce a symmetrical appearance; and (3) prostheses and physical complications of mastectomy, including lymphedemas. 29 U.S.C. § 1185b(a). The insurer must also provide written notice to its participants of the above coverage required by the WHCRA. *Id.* § 1185b(b). The Plan documents comply with this directive. *See* Schultz Decl.*,* Ex. A, p. 166. The WHCRA imposes no requirement other than that a plan cover mastectomy-related breast reconstruction to the same extent it covers other benefits. 29 U.S.C. § 1185b(a)("Such coverage may be subject to annual deductibles and coinsurance provisions as may

be deemed appropriate ad as are consistent with those established for other benefits under the plan or coverage). As noted in the Amended Complaint, nothing *prevents* a plan from negotiating a particular reimbursement with a provider of mastectomy-related breast reconstruction services but nothing in the WHCRA *requires* a plan to do so. S*ee* Sirota Decl., Ex. A ¶ 27 (citing 29 U.S.C. § 1185b(d)). The WHCRA also does not obligate a plan to create any special exceptions to its in-network/out-of-network coverage terms for breast reconstruction services as far as quantum of reimbursable benefits. *See, e.g., Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 625-630 (2d Cir. 2008) (holding that WHCRA requires only that group health plans cover reconstruction after mastectomy, but does not specify level of benefits that must be provided).  Plaintiffs will not be able to cite a single case supporting the argument that the WHCRA or ERISA legally require 100% reimbursement of a plastic surgeon's bill for breast reconstruction services simply because those services were incident to mastectomy.

At bottom, while the allegations in Plaintiff's Amended Complaint are "such [] vague statements [of] the kind of 'unadorned, the-defendant-unlawfully-harmed-me accusation' that does not pass muster under Rule 8(a)," they also appear to ignore the Plan and/or seek relief that is wholly unwarranted.  *See Nyame v. Bronx Leb. Hosp. Ctr.*, No. 08-cv-9656, 2010 U.S. Dist. LEXIS 33949, at *18 (S.D.N.Y. Mar. 31, 2010) (holding that conclusory statements that someone was denied benefits that were allegedly owed "are insufficient to make out a plausible claim under ERISA"); *see also McDonough v. Horizon BCBS*, No. 09-cv-571, 2009 U.S. Dist. LEXIS 93642, at *9 (D.N.J. Oct. 7, 2009) (quoting *Iqbal*, 556 U.S. at 677).

Accordingly, Plaintiffs' ERISA claims fails to sufficiently state a claim for which relief can be granted. As such, Plaintiffs' Amended Complaint must be dismissed.

16

## <u>CONCLUSION</u>

For the reasons set forth herein Defendant Blue Cross of California d/b/a Anthem Blue Cross respectfully requests that its Motion to Dismiss be granted in all respects, together with such other and further relief as the Court deems just and proper.


Dated: New York, New York
       March 27, 2020

Respectfully submitted,

TROUTMAN SANDERS LLP


By: */s/ Valerie Sirota*
    Valerie Sirota, Esq.
    875 Third Avenue
    New York, NY  10022
    212.704.6067
    Valerie.Sirota@troutman.com

*Attorneys for Defendant Blue Cross of California d/b/a Anthem Blue Cross*

17

41866321