# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PRESTIGE INSTITUTE FOR PLASTIC SURGERY, P.C., and KEITH M. BLECHMAN, M.D., P.C., on behalf of PATIENT NP,<br><br>        Plaintiffs,<br><br>    v.<br><br>HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, and INDEPENDENCE BLUE CROSS,<br>        Defendants. | Case No. 20-cv-495 (ES) (CLW) |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS TO DISMISS THE AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND .......................................................................... 3

III.    ARGUMENT ...................................................................................................... 6

   A.  Standard of Review ...................................................................................... 6

   B.  Plaintiffs Have Standing under ERISA as Designated Authorized Representatives ........... 7

   C.  Plaintiffs Have Standing as Beneficiaries ........................................................ 11

   D.  Defendant Horizon is a Proper Defendant ....................................................... 11

   E.  The Complaint States A Claim ..................................................................... 14

IV.    CONCLUSION ................................................................................................ 18

# **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................. 6

*Atlantic Plastic and Hand Surgery, P.A. v. Anthem Blue Cross and Health Ins. Co.*,
  2018 U.S. LEXIS 186320 (D.N.J. Oct. 31. 2018).................................................. 17

*Atlantic Plastic and Hand Surgery, P.A. v. Anthem Blue Cross and Health Ins. Co.*,
  2018 U.S. LEXIS 47181 (D.N.J. Mar. 22, 2018).................................................... 17

*Atlas Acquisitions, LLC v. Porania, LLC*,
  2019 U.S. Dist. LEXIS 200564 (D.N.J. Nov. 19, 2019)........................................... 7

*Beccerril v. Spartan Concerte Prods., LLC*,
  2020 U.S. App. LEXIS 24728 (3d Cir. Jan. 27, 2020) ........................................... 11

*Brown v. J.B. Hunt Transp. Servs.*, 586 F.3d 1079 (8th Cir. 2009).............................. 13

*CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165 (3d Cir. 2014)........................... 8

*Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*,
  591 F.3d 1337 (11th Cir. 2009)............................................................................. 8

*Cyr v. Reliance Std. Life Ins. Co.*, 642 F.3d 1202 (9th Cir. 2011)............................... 13

*Egelhoff v. Egelhoffex rel Breiner*, 532 U.S. 141 (2001).............................................. 8

*Estate of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131 (3d Cir. 2012)....................... 8

*Estate of Kenyon v. L&M Healthcare Health Reimbursement Account*,
  404 F. Supp. 3d 627 (D. Conn. 2019) ................................................................... 13

*Evans v. Employee Benefit Plan*, 311 Fed. App'x. 556 (3d Cir. 2009) ........................ 12

*Graden v. Conexant Sys., Inc.*, 496 F.3d 291 (3d Cir. 2007)....................................... 11

*Gregory Surgical Services, LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*,
  2007 U.S. Dist LEXIS 94056 (D. N.J. December 26, 2007) ................................... 9

*Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000)......... 13

*Heffner v. Blue Cross Blue Shield of Ala., Inc.*, 443 F.3d 1330 (11th Cir. 2006).......... 13

*I.V. Servs. of Am. v. Trustees of the Am. Consulting Eng'rs Council Ins. Fund*,
  136 F.3d 114 (2d Cir. 1998)................................................................................... 8

*I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc.*, 7 F. Supp. 2d 79 (D. Mass. 1998) .................. 9

*Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614 (2d Cir. 2008) ............................................ 17

*Larson v. United Healthcare Ins. Co.*, 723 F.3d 905 (7th Cir. 2013) ........................................... 13

*Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316 (3d Cir. 2015) ................................................... 12

*LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs., Inc.*, 703 F.3d 835 (5th Cir. 2013) .............. 13

*MBody Minimally Invasive Surgery  v. Empire Healthchoice HMO, Inc.*,
    2016 U.S. Dist. LEXIS 66149 (S.D.N.Y. May 19, 2016) ........................................................ 7

*Millennium Healthcare of Clifton v. Aetna Life Ins. Co.*,
    2019 U.S. Dist. LEXIS 224616 (D.N.J. Nov. 15, 2019) ........................................................ 17

*Misic v. Bldg. Serv. Emps. Health & Welfare Trust*, 789 F.2d 1374 (9th Cir. 1986) .............. 9, 10

*Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416 (6th Cir. 2006) ................................................... 13

*N.Y. State Psychiatric Ass'n v. UnitedHealth Grp.*, 798 F.3d 125 (2d Cir. 2015) ....................... 12

*Omega Hosp., LLC. v. United Healthcare Servs.*, 345 F. Supp. 3d 712 (M.D. La. 2018) ............ 8

*Outpatient Specialty Surgery Partners, Ltd. v. UnitedHealth Ins. Co.*,
    2016 U.S. Dist. LEXIS 82312 (S.D. Tex. June 24, 2016) ........................................................ 8

*Prof'l Orthopedic Associates, P.A. v. Excellus Blue Cross Blue Shield*,
    2015 U.S. Dist. LEXIS 91815 (D.N.J. July 15, 2015) .............................................................. 7

*Rizzo-Rupon v. Int'l Ass'n of Machinists & Aero. Workers*,
    2019 U.S. Dist. LEXIS 215871 (D.N.J. Dec. 16, 2019) ........................................................... 6

*Shah v. Blue Cross Blue Shield of N.J.* ......................................................................................... 13

*Shah v. Horizon Blue Cross Blue Shield*,
    2017 U.S. Dist. LEXIS 23885 (D.N.J. Feb. 21, 2017) ............................................................ 14

*Univ. Spine Ctr. v. Cigna Health & Life Ins. Co.*,
    2018 U.S. Dist. LEXIS 148387 (D.N.J. Aug. 29, 2018) .......................................................... 17

*Valdes v. Century 21 Real Estate, LLC*,
    2019 U.S. Dist. LEXIS 182616 (D.N.J. Oct. 22, 2019) ............................................................ 7

*Warth v. Seldin*, 422 U.S. 490 (1975) ............................................................................................. 6

*Wayne Surgical Ctr., LLC v. Concentra Preferred Sys.*,
   2007 U.S. Dist. LEXIS 61137 (D.N.J. Aug. 20, 2007) ............................................ 9

*Wilson v. Rackmill*, 878 F.2d 772 (3d Cir. 1989) ........................................................ 6

*Wolff v. Aetna Life Ins. Co.*, 2020 U.S. Dist. LEXIS 57864 (M.D. Pa. Apr. 2, 2020) ................. 12

**Statutes**

ERISA§ 502(a)(1)(B) ........................................................................................ passim

Women's Health and Cancer Rights Act, 29 U.S.C. § 1185b ............................... passim

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 6

**Regulations**

29 C.F.R. § 2560.503-1(b)(4) ............................................................................. 7

29 C.F.R. § 2560-503.1(g) ................................................................................. 18

80 Fed. Reg. 72266 (Nov. 18, 2015) .................................................................. 7

Plaintiffs Prestige Institute for Plastic Surgery, P.C. ("Prestige Institute"), Keith M. Blechman, M.D., P.C. ("Blechman") (together, "Plaintiffs"), hereby respectfully file this memorandum of law in opposition to the motions of Defendant Horizon Blue Cross Blue Shield ("Horizon") and Defendant Independence Blue Cross (IBC) (together, "Defendants") to dismiss the Complaint. For the reasons that follow, Defendants' motions should be denied.[1]

## I.     <u>INTRODUCTION</u>

This ERISA case involves Defendants' substantial under-reimbursement to Plaintiffs for post-mastectomy breast reconstruction surgical services.   Joseph F. Tamburrino, M.D. ("Tamburrino"), a breast reconstruction specialist surgeon affiliated with Prestige Institute, and Keith M. Blechman, M.D., another breast reconstruction specialist surgeon, performed two reconstruction surgeries on the patient, a plan participant of the Thomas Jefferson University Hospital Employer Plan (the "Plan"). Defendants' purported reimbursement based on the out-of-network rate violated the terms of the Plan, which mandated billed charges for out-of-area services.

Breast reconstruction is also a federal mandate under the Women's Health and Cancer Rights Act ("WHCRA"), which requires insurers to cover and reimburse post-mastectomy breast reconstruction surgery. The WHCRA prohibits insurers from reducing or limiting the reimbursement of an attending provider. Defendants' purported reimbursement based on the out-of-network rate also ran afoul of New Jersey law, under which the Commissioner of New Jersey's Department of Banking and Insurance ("DOBI") required insurers to offer in-network benefits to patients when in-network surgeons were unavailable or unqualified to perform breast

---

[1]     Defendants Horizon and IBC filed separate briefs. For the sake of judicial efficiency, and because there is some overlap between Defendants' arguments, Plaintiff responds with one brief opposing both motions.

        The filing deadline for this brief is subject to Standing Order 2020-04, which extended filing deadlines for 45 days.

reconstruction surgery.  This was the case here, where the patient required a surgical procedure that could only be performed by fellowship-trained microsurgeons.  Such specialized surgeons were not in Horizon's network.

After performing the surgeries, Plaintiff submitted invoices to Defendant Horizon for a total amount of $293,533.29.  Defendants Horizon and IBC reimbursed Plaintiff only $5,263.92, leaving an unreimbursed amount of $288,269.37 for which the patient remains liable.  Defendants paid 2% of the total billed amount.

Defendants Horizon and IBC move to dismiss for several reasons.  They contend that Plaintiffs lack ERISA standing because the Plan has an anti-assignment provision.  However, the Complaint alleges that the patient designated Plaintiff as an Authorized Representative. The Designation of Authorized Representative is authorized by ERISA. 29 C.F.R. § 2560.503-1(b)(4). This designation is not limited to internal appeals.  The claimant's authorized representative is also entitled to pursue available remedies under ERISA § 502(a)(1)(B) on behalf of the claimant. Although Defendants contend otherwise, they are mistaken.

Horizon (but not IBC), contends that it is not a proper defendant because an ERISA § 502(a)(1)(B) claim is enforceable only against a healthcare plan as an entity or a claims administrator. Defendant Horizon's motion to dismiss on the basis that it is not a proper defendant is without merit.

Both Defendants also contend that the Complaint should be dismissed because it "does not tie Plaintiff's demand for additional benefits to any specific plan term." This charge is belied by the specific allegations of the Complaint.  It alleges that the Plan terms specified that reimbursement cannot be reduced by applying out-of-network rates. Compl. ¶ 42. The Plan further specifies that out-of-area reimbursement must be paid based on the billed amount (in the absence

of negotiation).  (Doc. 16-2, at 64).  The Complaint also alleges that post-mastectomy breast reconstruction is a federal mandate under the WHCRA, which requires that it be covered and reimbursed. Compl. ¶¶ 26-29.

Defendants' motions to dismiss the Amended Complaint should be denied.

## II.     FACTUAL BACKGROUND

On August 21, 2017, Patient NP, underwent bilateral mastectomies and immediately following, bilateral breast reconstruction at Our Lady of Lourdes Medical Center in Camden, New Jersey. Dr. Tamburrino and Dr. Blechman, as co-surgeons, performed the breast reconstruction procedure.  Compl. ¶ 31.

They performed a highly specialized surgical procedure called DIEP (deep inferior epigastric perforator breast reconstruction procedure). Am. Compl. ¶ 30. This surgery could only be performed by fellowship-trained microsurgeons. One- and two-year fellowship training is post-residency and beyond Board certification.  *Id.*

After receiving prior authorization from Horizon, and after performing this breast reconstruction surgery, Plaintiffs submitted invoices on CMS-1500 forms, as required, to Horizon for $222,794.72.  Compl. ¶¶ 32, 48. Defendants determined that the Allowed Amount was $3,671.39, leaving an unpaid amount of $219,123.33.

Defendants do not move to dismiss on the basis of lack of exhaustion of administrative remedies. Plaintiff Prestige Institute filed an appeal concerning the amount of Defendant's reimbursement, which IBC denied on March 27, 2018.  IBC stated that "the enrollee's claim was processed correctly in accordance with her Personal Choice plan provision for inpatient professional services performed by an out-of-network provider." It further stated that "Covered Expense" meant the lesser of the Medicare Professional Allowable Payment or of [sic] the

3

Provider's charges for Covered Services." For services that were not recognized or reimbursed by Medicare, the amount was determined by an "applicable fee schedule or the Provider's charges." "For services not recognized by this fee schedule, the amount was determined by reimbursing 50% of the Professional Provider's billed charges." IBC did not specify how Prestige Institute's claim was reimbursed.  Compl. ¶¶ 36-37.

Plaintiff Prestige Institute filed a second-level appeal which Defendants refused to process. Compl. ¶¶ 44-47.

Plaintiff Blechman filed an appeal concerning the amount of Defendant's reimbursement, which IBC denied on May 25, 2018.  It stated that the "claim was processed correctly and in accordance with the Tier 3 benefits because the surgical services were rendered by an out-of-network provider."  Compl. ¶ 53. Under the Plan, there is no "Tier 3 benefits category" for out-of-network providers.  There are Tier 1 and Tier 2 benefits for in-network providers that differ only by way of the amount of co-pays.  (Doc. 16-2, at 5-15).

Plaintiff Blechman filed a second-level appeal, which IBC denied on August 17, 2018.  It stated that "the claim has been processed correctly and in accordance with [the patient's] out-of-network benefits."  Compl. ¶ 58.

On November 22, 2017, Dr. Tamburrino performed additional breast reconstruction surgery on Patient NP: fat grafting to shape the breasts, bilateral nipple-areaolar reconstruction, and surgical repair of the abdominal donor site.  Compl. ¶ 63.

Plaintiff Prestige Institute submitted an invoice on a CMS-1500 form, as required, to Horizon for $70,935.93. Defendants determined that the Allowed Amount for the May 10, 2017, surgery was $1,592.48, leaving an unpaid amount of $69,343.45. Compl. ¶¶ 64.

Defendant IBC made a final adverse benefit decision on January 25, 2019.  It stated in its denial letter in its entirety and without further explanation that "it was determined the services were priced correctly."

Plaintiffs' claims were processed under the Blue Card Program. Under the Blue Card Program, Defendant Horizon was the Host Plan and Defendant IBC was the Home Plan. The BCBS insurer located in the allocated geographical market area where the member is enrolled is referred to as the Home Plan. Horizon was the Host Plan because Plaintiff's medical services were provided to the patient in Horizon's allocated geographical market area. IBC was the Home Plan because the patient was enrolled in IBC's allocated geographical market area.  Compl. ¶¶ 16-24.

Plaintiffs' claims were out of area, meaning that they were out of Defendant IBC's allocated geographical market area. The Plan prescribes special rules for out-of-area out-of-network provider claims, that differ in this case from in-area out-of-network claims.

The Plan states that such claims are reimbursed based on the Host Blue's "nonparticipating provider local payment or the pricing arrangements required by applicable state law," or billed charges, or a negotiated amount. (Doc. 16-2, at 65). The Complaint alleges that Defendants did not negotiate with Plaintiffs. Compl. ¶ 27. The pricing arrangements required by applicable state law are set out by DOBI, which requires, in the case of post-mastectomy breast reconstruction procedures, that patients obtain in-network benefits for the services of out-of-network surgeons when in-network surgeons are unavailable. Defendants did not reimburse Plaintiffs their billed charges, under the terms of the Plan, nor did Defendants reimburse Plaintiffs pursuant to the statutory terms of the WHCRA.[2]

---

[2] Even if, *arguendo*, Defendants were required to reimburse Plaintiffs based on the "Host Blue's nonparticipating provider local payment," Defendants have never disclosed what this amount was or its methodology, in violation of ERISA.

Plaintiff Prestige Institute received a Designation of Authorized Representative from

Patient NP.  It stated, in relevant part:

> I hereby . . .convey directly to Prestige Institute for Plastic Surgery, P.C.  and Dr. Joseph Tamburrino as my Statutory Derivative Beneficiary, commonly known as a Designated Authorized Representative, of all medical benefits and/or insurance reimbursement.

Plaintiff Blechman received a Designation of Authorized Representative from Patient NP.

It stated, in relevant part:

> I . . . hereby convey directly to Dr. Keith M. Blechman, Keith M. Blechman, M.D., P.C. . . . all medical benefits and/or insurance reimbursement, if any otherwise payable to me . . . as my Statutory Derivative Beneficiary, commonly known as a Designated Authorized Representative, of all medical benefits and/or insurance reimbursement.

## III.    ARGUMENT

### A.    Standard of Review

Fed. R. Civ. P. 12(b)(6) permits the court to dismiss a complaint only if a plaintiff fails to

state a claim upon which relief can be granted.  The moving party bears the burden of showing

that no claim has been stated.  *Rizzo-Rupon v. Int'l Ass'n of Machinists & Aero. Workers*, 2019

U.S. Dist. LEXIS 215871, *3 (D.N.J. Dec. 16, 2019).  The court must take all allegations in the

complaint and treat them as true and view them in the light most favorable to the plaintiff.  *Warth*

*v. Seldin*, 422 U.S. 490, 501 (1975).  Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate only

when "it is clear that no relief could be granted under any set of facts that could be proved

consistent with the allegations." *Rizzo-Rupon*, 2019 U.S. Dist. LEXIS 215871, *3 (quoting *Wilson*

*v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989)).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Atlas Acquisitions,*

*LLC v. Porania, LLC*, 2019 U.S. Dist. LEXIS 200564, *3-4 (D.N.J. Nov. 19, 2019); *Valdes v. Century 21 Real Estate, LLC*, 2019 U.S. Dist. LEXIS 182616, *3 (D.N.J. Oct. 22, 2019).

### B.    Plaintiffs Have Standing under ERISA as Designated Authorized Representatives

Plaintiffs received Designations of Authorized Representative from Patient NP, designations specifically authorized by ERISA rulemaking that cannot be contractually excluded and must be included in every insurance plan. 29 C.F.R. § 2560.503-1(b)(4).

Defendants claim that a Designated Authorized Representative is limited to internal appeals. However, the patient's authorized representative is also entitled to pursue available remedies under ERISA § 502(a)(1)(B) on behalf of the patient.  Authorized representatives must sue "on behalf of" patients, and only assignees may file suit in their own name. *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1143 (C.D. Cal. 2015). Plaintiffs sue on behalf of Patient HG.  Available remedies include litigation. *See* 80 Fed. Reg. 72266 (Nov. 18, 2015) (permitting litigation).[3]

"ERISA regulations require that an employee benefit plan's 'claims procedures do not preclude an authorized representative of a claimant from acting on behalf of such claimant in

---

[3] Defendants' citation to *MBody Minimally Invasive Surgery v. Empire Healthchoice HMO, Inc.*, 2016 U.S. Dist. LEXIS 66149 (S.D.N.Y. May 19, 2016), is inapposite.  In *MBody Minimally Invasive Surgery*, the court noted that the "plaintiffs fail to explain how their purported status as "authorized representatives" under this regulation is distinguishable from their theory that they are proper assignees of their patients' Claims." In *Prof'l Orthopedic Associates, P.A. v. Excellus Blue Cross Blue Shield*, 2015 U.S. Dist. LEXIS 91815 (D.N.J. July 15, 2015), the plaintiff did not point to a "Designation of Authorized Representative" form or to any rulemaking authority. In this case, 29 C.F.R. § 2560.503-1(b)(4) and the allegation that the patient designated Plaintiff as the Authorized Representative, Am. Compl. ¶ 65, distinguishes both cases. Contrary to Defendant's statement, a Designation of Authorized Representative is enforceable and cannot be contractually waived.

pursuing a benefit claim or appeal of an adverse benefit determination.'" *Outpatient Specialty Surgery Partners, Ltd. v. UnitedHealth Ins. Co.*, 2016 U.S. Dist. LEXIS 82312 (S.D. Tex. June 24, 2016). Payments to patients' authorized representatives are payments to patients themselves and do not implicate a plan's anti-assignment clause. *Omega Hosp., LLC. v. United Healthcare Servs.*, 345 F. Supp. 3d 712, 731 (M.D. La. 2018).

The United States Supreme Court made clear that ERISA must be interpreted uniformly and must not vary state by state on the basis of each jurisdiction's law. *Egelhoff v. Egelhoffex rel Breiner*, 532 U.S. 141, 149 (2001). ERISA is to be interpreted in light of "federal common law" and in a manner that furthers "ERISA's purposes." *Estate of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131, 135 (3d Cir. 2012).

The issue of uniformity was resolved in the interpretation of the assignment provision itself. Health insurers and plans argued that assignments of benefits were limited to internal appeals and not to federal litigation under ERISA –the identical argument Defendants make with respect to the Designation of Authorized Representative form in this case.

The Third Circuit – and virtually every other circuit court – rejected this cramped reading. In *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014), the Third Circuit adopted the majority position on the issue of standing-by-assignment. *See I.V. Servs. of Am. v. Trustees of the Am. Consulting Eng'rs Council Ins. Fund*, 136 F.3d 114, 117 n.2 (2d Cir. 1998) ("assignees of beneficiaries to an ERISA-governed insurance plan have standing to sue under ERISA").

Courts understood that without standing to sue under ERISA, any purported rights could not be enforced and would be rendered illusory. *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1352-53 (11th Cir. 2009). *I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc.*,

7 F. Supp. 2d 79, 84 (D. Mass. 1998) ("An assignment to receive payment of benefits necessarily incorporates the right to seek payment.  As Plaintiff argues, the right to receive benefits would be hollow without such enforcement capabilities."); *Wayne Surgical Ctr., LLC v. Concentra Preferred Sys.,* 2007 U.S. Dist. LEXIS 61137, at *12 (D.N.J. Aug. 20, 2007) ("[T]his Court …finds that it is illogical to recognize that [a provider] as a valid assignee has a right to receive the benefit of direct reimbursement from its patients' insurers but cannot enforce this right."); *Gregory Surgical Services, LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, 2007 U.S. Dist LEXIS 94056, at * 7-8, n.1 (D. N.J. December 26, 2007) ("[A]n assignment of benefits under a plan includes the assignment of the right to sue for such benefits, for without the latter, the former would be unenforceable."). Even where monies are paid to the patient, the patient must then forward these monies to the provider.

The Court should treat the Designation of Authorized Representative the same under Third Circuit law as an assignment (although it does not come under any anti-assignment provision) for purposes of recognizing standing under ERISA.  The Designation of Authorized Representative should not be limited to internal appeals for the same reason that assignments have been held as not so limited:  it would make it "unnecessary for health care providers to evaluate the solvency of patients before commencing medical treatment," and it would eliminate "the necessity for beneficiaries to pay potentially large medical bills and await compensation from the plan." *Misic v. Bldg. Serv. Emps. Health & Welfare Trust*, 789 F.2d 1374, 1377 (9th Cir. 1986).

Recognition of the Designation of Authorized Representative as encompassing litigation on behalf of the patient in order to enforce the patient's appellate rights would not undo anti-assignment provisions.  The two are fundamentally different.  An Authorized Representative is not an assignee. She does not own the plan benefits because they have not been assigned to her. She

does not maintain an action in her own name, but on behalf of the patient she represents. The action always belongs to the patient, the Plan member.

To hold that a Designation of Authorized Representative only applies to internal appeals gives every incentive to insurers and plans to deny internal appeals, knowing that only a plan member may bring an ERISA action – the person least able to maintain an action financially, find and pay qualified counsel, and try the case, especially since the member may also be ill from the symptoms of the disease underlying her claim or recuperating from surgery, or may have died for this illness.[4] Since this is true, out-of-network providers will no longer be able to provide medical services to low- and middle-income families who cannot pay the entire medical bill upfront, only the wealthy: a two-tiered medical system – the wealthiest Americans (who do not need health insurance since they can self-pay), and everyone else. *Misic*, 789 F.2d at 1377. The majority of Americans with insurance will be forced to go to in-network providers, even when they pay extra premiums for out-of-network coverage, which become illusionary. When in-network providers cannot perform the specific surgical procedures required because they are unqualified to do so (such as DIEP breast reconstruction surgery), plan members will not have the surgery they are entitled to have under their plans. After all, there is no requirement under New Jersey state law or elsewhere that Defendant Horizon must have in-network breast reconstruction providers at all, much less those specializing in the DIEP microsurgical procedure. Plan members will either not receive optimum medical care or will forgo care entirely. That is what is at stake here.

---

[4]    Insurers often serve counterclaims or recoupment actions against plan members who sue to discourage them from continuing with their litigation. Since these actions cannot be defended on a contingent basis, this is an effective tactic.

### C.      Plaintiffs Have Standing as Beneficiaries

It is well established under ERISA that a "beneficiary" is "a person" designated by a participant, *or* by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(16)(A) (emphasis added).  The disjunction is important. Although ERISA often focuses on an ERISA plan's definition of "participant" and "beneficiary," the statute provides that an ERISA participant may designate someone as a beneficiary.  Once so designated, this beneficiary has the same ERISA rights as the participant, including but not limited to standing under ERISA to maintain a legal claim.

The Amended Complaint alleges that Patient HG, a Plan participant, designated Plaintiffs as beneficiaries.  The language in the Assignment/Designation of Authorized Representative set this out, conveying "all benefit and non-benefit rights (including the right to any payments)" under Patient HG's health insurance policy.

Defendants did not move to dismiss on this ground and made no argument concerning it. As a result, they waived it. *Beccerril v. Spartan Concerte Prods., LLC*, 2020 U.S. App. LEXIS 2472, *8 n.8 (3d Cir. Jan. 27, 2020) (an argument not raised in an opening brief is waived).

### D.      Defendant Horizon is a Proper Defendant

Horizon (but not IBC), contends that it is not a proper defendant because an ERISA § 502(a)(1)(B) claim is enforceable only against a healthcare plan as an entity or a claims administrator.  The measurement is not based on labels or designation but on function.[5] Defendant Horizon's motion to dismiss on the basis that it is not a proper defendant is without merit.[6]

---

[5]      Defendant Horizon states in its brief that it "does not fund, insure, or underwrite the TJUH Plan's benefits." Horizon Br. at 16.  That is true, but then neither did Defendant IBC or any claims administrator do those things, because the Plan was self-funded.

[6]      Defendant Horizon's reliance on *Graden v. Conexant Sys., Inc.*, 496 F.3d 291 (3d Cir. 2007), is misplaced. *Graden* was abrogated by *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316 (3d

In *Wolff v. Aetna Life Ins. Co.*, 2020 U.S. Dist. LEXIS 57864, *8 (M.D. Pa. Apr. 2, 2020), the court held that the "proper defendant in a § 502(a)(1)(B) claim is the plan itself or a person who controls the administration of benefits. Exercising control over the administration of benefits is the defining feature of the proper defendant under 29 U.S.C. § 1132(a)(1)(B). Interpreting the terms of ERISA, courts have found that a party exercises control over the administration of benefits if it possesses the final authority to authorize or disallow a claim for benefits under the plan." This authority need not be exclusive. *Evans*, 311 Fed. App'x., at 558 ("In a claim for wrongful denial of benefits under ERISA, the proper defendant is the plan itself or a person who controls the administration of benefits under the plan.").

In this case, the Plan specifies that one of the sources of reimbursement is the "nonparticipating provider local payment." Local payment means the Host Plan, which is Defendant Horizon. Under these circumstances, it is Horizon that makes the final decision concerning the claim for benefits. The Complaint also alleges that Horizon was IBC's agent. Compl. ¶ 24. All claims for reimbursement were made to Horizon, appeals were sent to both Defendants, and the reimbursement adjudication was based on the status of Horizon's network. Compl. ¶¶ 32, 44, 48, 52, 57, 64-65, 71.

In *N.Y. State Psychiatric Ass'n v. UnitedHealth Grp.*, 798 F.3d 125, 132 (2d Cir. 2015), the Second Circuit held that non-plan defendants may be sued under § 502(a)(1)(B). It stated: "We ultimately reject United's argument that it cannot be sued under § 502(a)(1)(B) as a claims administrator. By its plain terms, § 502(a)(1)(B) does not preclude suits against claims administrators." *New York State Psychiatric* cited cases in the Fifth, Sixth, Seventh, Eighth, and

Cir. 2015). In addition, its holding was expanded by *Evans v. Employee Benefit Plan*, 311 Fed. App'x. 556, 558 (3d Cir. 2009) to include more than the plan or the claims administrator.

12

Eleventh Circuits.[7]  It also cited to *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000), in which the United States Supreme Court held that a non-plan defendant may be sued under § 502(a)(1)(B).

    *Estate of Kenyon v. L&M Healthcare Health Reimbursement Account*, 404 F. Supp. 3d 627 (D. Conn. 2019), is not on point.  In that case, the court held that Triple-S did not have discretionary control over appeals, unlike Defendant Horizon here.  Instead, "the extent of the estate's allegations outside the scope of the plan are that Triple S 'participated in and approved the decision-making process and failed to process the appeal of the denial at issue in this matter,' and that Triple-S 'refused to consider the appeal because it did not adjust the original claim'. . . These sorts of conclusory allegations of some partial control do not show Triple-S to have acted as anything approaching even the liberal standard of *de facto* plan administrator." *Id.* at *633-634.

    Defendant Horizon's inclusion of a transcript of the oral argument in *Shah v. Blue Cross Blue Shield of N.J.* demonstrates Plaintiff's point. The Amended Complaint alleged that Defendant Horizon played a substantial role in administering the claims and (under) reimbursing Plaintiff in this case.  Oral argument in *Shah* revealed the opposite:

    THE COURT:        I said what role did they [Horizon] play in deciding whether or not to pay your client?

    MR. GOTTLIEB:     That they did not play a role in.

    THE COURT:        So then why are they a defendant in the case?

    MR. GOTTLIEB:     To the extent that it's unclear to us whether or not they are fiduciaries and as I –

---

[7] *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 913 (7th Cir. 2013); *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs., Inc.*, 703 F.3d 835, 843 (5th Cir. 2013); *Cyr v. Reliance Std. Life Ins. Co.*, 642 F.3d 1202, 1205 (9th Cir. 2011); *Brown v. J.B. Hunt Transp. Servs.*, 586 F.3d 1079, 1081 (8th Cir. 2009); *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006); *Heffner v. Blue Cross Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1333 (11th Cir. 2006).

> THE COURT:          Do you have any evidence whatsoever that they played any role in the decision not to pay your client?
>
> MR. GOTTLIEB:       No, we do not.
> .  .  .
> THE COURT:          Well, don't you think – I mean I review your complaint and you don't even allege they had anything to do with denying coverage to your client.

Holzapfel Certification, Exh. A, D.E. 25-2, at 7-8 (7:18-8:18).

Finally, the factual issue of Defendant Keystone's discretion over the Plan raises matters outside the pleadings that are cannot be resolved on a motion to dismiss. *Shah v. Horizon Blue Cross Blue Shield*, 2017 U.S. Dist. LEXIS 23885, *8 (D.N.J. Feb. 21, 2017).

Defendant Horizon's contention that it is not a proper defendant under § 502(a)(1)(B) is without merit.

### E.       The Complaint States A Claim

Both Defendants also contend that the Complaint should be dismissed because it does not "tie the demand for additional benefits to a plan term." This contention is without merit. Defendants ignore that because the WHCRA is a Federal mandate (which requires that post-mastectomy breast reconstruction be covered and reimbursed) it must be, and was, incorporated into all ERISA plans, including the Plan. 29 U.S.C. § 1185b(b); Compl. ¶¶ 42, 55, 70 ("Breast reconstruction was a covered service under Patient NP's Plan because it was mandated under the WHCRA.").

This law, codified at 29 U.S.C. § 1185b, states:

(a) **In general.** A group health plan . . . shall provide, in case of a participant or beneficiary who is receiving benefits in connection with a mastectomy and who elects breast reconstruction in connection with such mastectomy, coverage for –

> (1) all stages of reconstruction of the breast on which mastectomy has been performed . . . in a manner determined in consultation with the attending physician and the patient.  Such coverage may be subject to annual deductibles and coinsurance provisions as may be deemed appropriate

and as are consistent with those established for other benefits under the plan or coverage . . .

(c)     **Prohibitions.**  A group health plan, and a health insurance issuer offering group health insurance coverage in connection with a group health plan, may not –

(2)  penalize or otherwise reduce or limit the reimbursement of an attending provider,

(d)     **Rule of construction.**  Nothing in this section shall be construed to prevent a group health plan or a health insurance issuer offering group health insurance coverage from negotiating the level and type of reimbursement with a provider for care provided in accordance with this section.

The structure of this statute is straightforward.  29 U.S.C. § 1185b(a) requires that post-mastectomy breast reconstruction surgery be *covered*. 29 U.S.C. § 1185b(c) prohibits any restrictions or limitations on the *reimbursement rate* for this type of surgery, whether performed by an in-network surgeon or an out-of-network surgeon, as compared to other types of surgery where a plan or insurer may reimburse based on an out-of-network reimbursement methodology. However, 29 U.S.C. § 1185b(d), provides an exception to the strict requirement of 29 U.S.C. § 1185b(c): the plan or insurer may negotiate a lower reimbursement amount with the provider.

In this case, Defendants could have, but failed to, negotiate with and execute an agreement with Plaintiff to pay a lower amount.  Instead, it unilaterally reimbursed Plaintiff based on its out-of-network methodology, in violation of the WHCRA.  Defendants' failure to reimburse Plaintiff pursuant to the WHCRA was a violation of ERISA, 29 U.S.C. § 1132(a)(1)(b).

The Plan documents also demonstrate that Plaintiffs' claims were out of area, meaning that they were out of Defendant IBC's allocated geographical market area. The Plan's rules for out-of-area out-of-network provider claims differ from in-area out-of-network claims.

The Plan states that such claims must be reimbursed based on the Host Blue's [the Host Blue is Defendant Horizon] "nonparticipating provider local payment or the pricing arrangements

required by applicable state law," or billed charges, or a negotiated amount. (Doc. 16-2, at 65). Breaking this down, the Complaint alleges that Defendants did not negotiate with Plaintiffs. Compl. ¶ 27. Applicable state law required insurers to offer in-network benefits to patients when in-network surgeons were unavailable or unqualified to perform breast reconstruction surgery.[8] Compl. ¶ 75. Accordingly, since there was no negotiated amount but there was "pricing arrangements required by applicable state law" as well as "pricing arrangements required by applicable federal law," Defendants were not free to apply their "nonparticipating provider local payment" reimbursement methodology. They were constrained to reimburse these post-mastectomy breast reconstruction surgery procedures based either on state or federal law, or billed charges.

The terms of the WHCRA state that a plan's reimbursement for breast reconstruction surgery is different from reimbursement for other surgeries. Defendants conflate "coverage" and "reimbursement" under the WHCRA. The statute mandates coverage but states that "[s]uch coverage may be subject to annual deductibles and coinsurance provisions as may be deemed appropriate and as are consistent with those established for other benefits under the plan." 29 U.S.C. § 1185b(a).

The statute separately mandates reimbursement or coverage: "A group health plan, and a health insurance issuer offering group health insurance coverage in connection with a group health plan, may not – (2) penalize or otherwise reduce or limit the reimbursement of an attending provider." This simple and unambiguous statutory language requires that a plan and "issuer" (the

---

[8] The Complaint alleges that Defendants knew that there were no in-network providers who could perform the breast reconstruction surgeries on the patient. The DIEP surgery performed was so specialized that only fellowship-trained microsurgeons are qualified to perform it.

insurer) may not reduce the reimbursement of an attending provider offering post-mastectomy breast reconstruction surgery procedures.[9]

Defendants' other arguments concerning the WHCRA are equally unavailing. They posit that the WHCRA does not "create a stand-alone cause of action." There is no private right of action under the WHCRA, and there is no need for one. Because the WHCRA is a federal mandate, imposing coverage and benefits for mastectomy and post-mastectomy breast reconstruction procedures on health insurance plans – it may be enforced by ERISA § 502(a)(1)(B).[10]

Defendant Horizon appears to misconstrue the operation of the WHCRA in arguing that this statute does not require a plan to "create any special exceptions" to the amount of its coverage

---

[9] *Krauss v. Oxford Health Plans, Inc*., 517 F.3d 614 (2d Cir. 2008), is distinguishable. The plaintiff's claim for reimbursement was confined to the cost-sharing amounts consistent with those of other plans under 29 U.S.C. 1185b(a), and the court had no occasion to make any decision concerning the actual reimbursement amount mandated under 29 U.S.C. 1185b(c).

Defendant IBC provides an "alternate" interpretation of the reimbursement provision of the WHCRA. It suggests that "if a provider was paid a greater fee for a mastectomy when there was no reconstruction, but a lesser fee when reconstruction was to occur, such a reimbursement scheme would likely run afoul of the WHCRA."

There are several issues that make this "alternate" interpretation dead on arrival. First, the WHCRA requires coverage and reimbursement for post-mastectomy breast reconstruction surgery, not the mastectomy itself. Second, the provider who performs the mastectomy is generally not the provider(s) performing the breast reconstruction.

Defendant then speculates, with no proof at all, that providers who participate in HMOs owned by physicians would not provide post-mastectomy breast reconstruction surgery to their patients (ostensibly because it would be too expensive). Unlike insurers, physicians must abide by medical ethics. Defendant does not appear to see the irony of its argument.

This is not the time to guess. The Court's determination of a motion to dismiss is also not the time to accept Defendant's interpretation of a statute as true.

[10] Defendants' citations are inapposite. In *Atlantic Plastic and Hand Surgery, P.A. v. Anthem Blue Cross and Health Ins. Co.*, 2018 U.S. Dist. LEXIS 47181 (D.N.J. Mar. 22, 2018); and *Atlantic Plastic and Hand Surgery, P.A. v. Anthem Blue Cross and Health Ins. Co.*, 2018 U.S. Dist. LEXIS 186320 (D.N.J. Oct. 31, 2018), the plaintiff alleged the plan failed to pay usual and customary charges but did not allege that the plan actually promised to pay such charges. The same was true in *Univ. Spine Ctr. v. Cigna Health & Life Ins. Co.*, 2018 U.S. Dist. LEXIS 148387 (D.N.J. Aug. 29, 2018) ("No benefit plan term is identified as being violated."); and *Millennium Healthcare of Clifton v. Aetna Life Ins. Co.*, 2019 U.S. Dist. LEXIS 224616 (D.N.J. Nov. 15, 2019) ("Plaintiff fails to allege what the relevant provisions of the Patient's Plan state").

for breast reconstruction.  The WHCRA does not impose more coverage and benefits than the Plan because the terms of the WHCRA are incorporated into the Plan. 29 U.S.C. § 1185b(b).[11]

## IV. <u>CONCLUSION</u>

Plaintiffs respectfully requests that the Court deny Defendants' motions to dismiss the Complaint.

Dated: April 21, 2020

/s/ Robert J. Axelrod
AXELROD LLP
800 Third Avenue, Suite 2800
New York, NY 10022
(646) 448-5263
rjaxelrod@axelrodllp.com

Michael Fried
AXELROD LLP
354 North Fourth Avenue
Highland Park, NJ 08904
(732) 718-6171
mfried@axelrodllp.com

Leslie S. Howard
COHEN HOWARD LLP
766 Shrewsbury Avenue, Suite 200
Tinton Falls, NJ 07724
(732) 747-5202
lhoward@cohenhoward.com

Attorneys for Plaintiffs Prestige Institute for Plastic Surgery, P.C. and Keith M. Blechman, M.D., P.C.

---

[11] Contrary to Defendant IBC, Plaintiffs did not make a claim pursuant to the "Full and Fair Review" requirements under 29 C.F.R. § 2560-503.1(g). Rather, and as is clearly alleged in the Complaint, they alleged that violation of this rule resulted in "deemed exhaustion."  Compl. ¶ 91.