# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| PRESTIGE INSTITUTE FOR PLASTIC SURGERY, P.C., and KEITH M. BLECHMAN, M.D., P.C., on behalf of PATIENT HG, | Civ. No. 2:20-cv-00496-KM-ESK |
| Plaintiffs, | |
| v. | |
| KEYSTONE HEALTHPLAN EAST, BLUE CROSS OF CALIFORNIA d/b/a ANTHEM BLUE CROSS, and SIEMENS CORPORATION GROUP INSURANCE AND FLEXIBLE BENEFITS PROGRAM, | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS TO DISMISS THE AMENDED COMPLAINT

## Table of Contents

I.  INTRODUCTION ........................................................................................................ 1

II.  FACTUAL BACKGROUND ....................................................................................... 4

III.  ARGUMENT ............................................................................................................... 9

  A.  Standard of Review ................................................................................................ 9

  B.  Plaintiffs Have Standing as Assignees ................................................................. 9

  C.  Plaintiffs Have Standing Via a Power of Attorney ............................................. 10

  D.  Plaintiffs Have Standing under ERISA as Designated Authorized     Representatives ..... 11

  E.  Plaintiffs Have Standing as Beneficiaries ........................................................... 16

  F.  Defendant Keystone is a Proper Defendant ....................................................... 16

  G.  The Complaint States A Claim ............................................................................ 18

IV.  CONCLUSION ......................................................................................................... 21

## Table of Authorities

**Cases**

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
 99 F. Supp. 3d 1110 (C.D. Cal. 2015) ................................................................. 12

*Am. Orthopedic & Sports Med. v. Independence Blue Cross Blue Shield*,
 890 F.3d 445 (3d Cir. 2018) ................................................................................ 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................... 9

*Atlantic Plastic and Hand Surgery, P.A. v. Anthem Blue Cross and Health Ins. Co.*,
 2018 U.S. LEXIS 186320 (D.N.J. Oct. 31. 2018) ................................................ 20

*Atlantic Plastic and Hand Surgery, P.A. v. Anthem Blue Cross and Health Ins. Co.*,
 2018 U.S. LEXIS 47181 (D.N.J. Mar. 22, 2018) ................................................. 20

*Atlas Acquisitions, LLC v. Porania, LLC*,
 2019 U.S. Dist. LEXIS 200564 (D.N.J. Nov. 19, 2019) ........................................ 9

*Beccerril v. Spartan Concerte Prods., LLC*,
 2020 U.S. App. LEXIS 2472 (3d Cir. Jan. 27, 2020) .......................................... 16

*CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165 (3d Cir. 2014) .................. 9, 13

*Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*,
 591 F.3d 1337 (11th Cir. 2009) ........................................................................... 13

*Egelhoff v. Egelhoffex rel Breiner*, 532 U.S. 141 (2001) ......................................... 12

*Estate of Kensinger v. URL Pharma, Inc.* 674 F.3d 131 (3d Cir. 2012) ................... 12

*Estate of Kenyon v. L&M Healthcare Health Reimbursement Account*,
 404 F. Supp. 3d 627 (D. Conn. 2019) .................................................................. 17

*Gregory Surgical Services, LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*,
 2007 U.S. Dist LEXIS 94056 (D. N.J. December 26, 2007) ................................ 13

*I.V. Servs. of Am. v. Trustees of the Am. Consulting Eng'rs Council Ins. Fund*,
 136 F.3d 114 (2d Cir. 1998) ................................................................................. 13

*I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc.*, 7 F. Supp. 2d 79 (D. Mass. 1998) ................ 13

*Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614 (2d Cir. 2008) ......................... 19

*MBody Minimally Invasive Surgery  v. Empire Healthchoice HMO, Inc.*,
    2016 U.S. Dist. LEXIS 66149 (S.D.N.Y. May 19, 2016) ........................................ 12

*Millennium Healthcare of Clifton v. Aetna Life Ins. Co.*,
    2019 U.S. Dist. LEXIS 224616 (D.N.J. Nov. 15, 2019) ........................................ 20

*Misic v. Bldg. Serv. Emps. Health & Welfare Trust*, 789 F.2d 1374 (9th Cir. 1986) ............ 14, 15

*N. Jersey Brain & Spine Ctr. v. Aetna*, 801 F.3d 369 (3d Cir. 2015) ............................................ 9

*Omega Hosp., LLC. v. United Healthcare Servs.*, 345 F. Supp. 3d 712 (M.D. La. 2018) .......... 12

*Outpatient Specialty Surgery Partners, Ltd. v. UnitedHealth Ins. Co.*,
    2016 U.S. Dist. LEXIS 82312 (S.D. Tex. June 24, 2016) ........................................ 12

*Prof'l Orthopedic Associates, P.A. v. Excellus Blue Cross Blue Shield*,
    2015 U.S. Dist. LEXIS 91815 (D.N.J. July 15, 2015) ........................................ 12

*Rizzo-Rupon v. Int'l Ass'n of Machinists & Aero. Workers*,
    2019 U.S. Dist. LEXIS 215871 (D.N.J. Dec. 16, 2019) ........................................ 9

*Shah v. Horizon Blue Cross Blue Shield*,
    2017 U.S. Dist. LEXIS 23885 (D.N.J. Feb. 21, 2017) ........................................ 18

*Shah v. Horizon v. Blue Cross Blue Shield of N.J.*,
    2018 U.S. Dist. LEXIS 25695 (D.N.J. Feb. 16, 2018) ........................................ 17

*Univ. Spine Ctr. v. Cigna Health & Life Ins. Co.*,
    2018 U.S. Dist. LEXIS 148387 (D.N.J. Aug. 29, 2018) ........................................ 20

*Valdes v. Century 21 Real Estate, LLC*,
    2019 U.S. Dist. LEXIS 182616 (D.N.J. Oct. 22, 2019) ........................................ 9

*Warth v. Seldin*, 422 U.S. 490 (1975) ........................................ 9

*Wayne Surgical Ctr., LLC v. Concentra Preferred Sys.,* \
    2007 U.S. Dist. LEXIS 61137 (D.N.J. Aug. 20, 2007) ........................................ 13

*Wilson v. Rackmill*, 878 F.2d 772 (3d Cir. 1989) ........................................ 9

*Wolff v. Aetna Life Ins. Co.*, 2020 U.S. Dist. LEXIS 57864 (M.D. Pa. Apr. 2, 2020) ................. 17

**Statutes**

ERISA, § 502 (a)(1)(B)................................................................................................ passim

Women's Health and Cancer Rights Act, 29 U.S.C. § 1185b .............................................. passim

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................................. 9

**Regulations**

29 C.F.R. § 2560.503-1(b)(4) ............................................................................... 2, 11, 12

29 C.F.R. § 2560-503.1(g).......................................................................................... 21

80 Fed. Reg. 72266 (Nov. 18, 2015)........................................................................... 12

Plaintiffs Prestige Institute for Plastic Surgery, P.C. ("Prestige Institute"), and Keith M. Blechman, M.D., P.C. ("Blechman") (together, "Plaintiffs"), hereby respectfully file this memorandum of law in opposition to the motions of Defendant Keystone Health Plan East (Keystone), and Defendant Blue Cross of California d/b/a Anthem Blue Cross ("Anthem") (together, "Defendants") to dismiss the Complaint.  For the reasons that follow, Defendants' motions should be denied.[1]

## I.   **INTRODUCTION**

This ERISA case involves Defendants' substantial under-reimbursement to Plaintiffs for post-mastectomy breast reconstruction surgical services. Joseph F. Tamburrino, M.D. ("Tamburrino"), a breast reconstruction specialist surgeon affiliated with Prestige Institute, and Keith M. Blechman, M.D., another breast reconstruction specialist surgeon, performed as co-surgeons two reconstruction surgeries on the patient, a plan participant of Che Services (the "Plan").  Defendants' purported reimbursement based on the out-of-network rate violated the terms of the Plan, which mandated billed charges (minus appropriate surgical discounts) for out-of-area services.

Breast reconstruction is also a federal mandate under the Women's Health and Cancer Rights Act ("WHCRA"), which requires insurers to cover and reimburse post-mastectomy breast reconstruction surgery. The WHCRA prohibits insurers from reducing or limiting the reimbursement of an attending provider.   The patient required a surgical procedure that could only

---

[1]      Defendants Keystone and Anthem filed separate briefs.  For the sake of judicial efficiency, and because there is some overlap between Defendants' arguments, Plaintiff responds with one brief opposing both motions.

The filing deadline for this brief is subject to Standing Order 2020-04, which extended filing deadlines for 45 days.

Plaintiffs voluntarily dismissed Siemens and filed an Amended Complaint naming Che Services as the Plan. Che Services is fully insured and is not named as a defendant.

be performed by two fellowship-trained microsurgeons performing the surgery as co-surgeons. Such specialized surgeons were not in Keystone's network.

After performing the first of two surgeries, Plaintiff Prestige Institute submitted invoices to Defendant Keystone on behalf of Dr. Tamburrino for a total amount of $162,334.61. Defendants Keystone and Anthem reimbursed Plaintiff only $5,643.97. The entire amount paid was applied to the patient's liability, leaving her financially responsible for the full amount of $162,334.61.

Dr. Blechman submitted an invoice to Defendant Keystone for $174,200.00. Defendants reimbursed him $3,220.19, leaving the patient liable for $170,979.81.

After performing the second breast reconstruction surgery, Plaintiff Prestige Institute submitted an invoice to Defendant Keystone for $80,590.51. Defendants reimbursed it $5,663.98. The entire amount paid was applied to the patient's liability, leaving her financially responsible for the full amount, leaving the patient liable for $80,590.51.

In all, Plaintiffs billed Keystone $417,125.13. Defendants reimbursed Plaintiffs $17,748.24, leaving an unreimbursed amount of $399,376.89. Defendants paid 3% of the patient's total financial liability for post-mastectomy breast reconstruction.

Defendants Keystone and Anthem move to dismiss for several reasons. They contend that Plaintiffs lack ERISA standing because the Plan has an anti-assignment provision. It does not; it has the opposite provision – an assignment provision for out-of-network providers in in-network hospitals. Anthem also concedes the existence of a Power of Attorney. The Amended Complaint further alleges that the patient designated Plaintiffs as Authorized Representatives. The Designation of Authorized Representative is authorized by ERISA. 29 C.F.R. § 2560.503-1(b)(4). This designation is not limited to internal appeals. The claimant's authorized representative is also

entitled to pursue available remedies under ERISA § 502(a)(1)(B) on behalf of the claimant. Although Defendants contend otherwise, they are mistaken.

Keystone (but not Anthem), contends that it is not a proper defendant because Anthem paid the claims and determined the appeals. However, under the Blue Card Program, which governed the claims adjudication in this case, Defendants represented that the reimbursement amounts paid to Plaintiffs were based on the local, or Host Plan, meaning Keystone.  The Amended Complaint alleges that it was Defendant Keystone that made the reimbursement determinations, which under ERISA § 502(a)(1)(B) makes it a proper defendant.

Both Defendants also contend that the Complaint should be dismissed because the Plan does not require reimbursement of "100% of whatever charges Plaintiff submit." Elsewhere, Defendant Anthem contends that "Plaintiffs' claims ultimately boil down to an assertion that, because breast reconstruction incident to mastectomy cannot, under federal law, be excluded from coverage as a cosmetic procedure, and because Drs. Tamburrino and Blechman have impressive credentials, the Plan should have paid Plaintiffs' full billed charges."

The Amended Complaint does not make these allegations.  It recognizes that certain discounts may be applied against the billed amount, such as proper application of the multiple surgery and co-surgery rules. It further recognizes that certain procedures may be encompassed by other procedures but may be separately billed and reimbursed only by billing through the proper CPT code and modifier.  It does not allege that reimbursement amounts should be based on Drs. Tamburrino and Blechman's credentials apart from their qualifications to perform the specialized DIEP procedure. For these reasons, Defendants' motions to dismiss should be denied.

Defendants misread the WHCRA. The Complaint alleges that post-mastectomy breast reconstruction is a federal mandate under the WHCRA, which requires that it be covered and reimbursed. Am. Compl. ¶¶ 26-30.

Defendants' motions to dismiss the Complaint should be denied.

## II.   FACTUAL BACKGROUND

On May 30, 2018, Patient HG underwent bilateral mastectomies and immediately following, bilateral breast reconstruction at Doylestown Hospital. Dr. Tamburrino and Dr. Blechman, as co-surgeons, performed the breast reconstruction procedure.  Compl. ¶ 32.

After performing the first of two surgeries, Plaintiff Prestige Institute submitted invoices to Defendant Keystone on behalf of Dr. Tamburrino for a total amount of $162,334.61.  Defendants Keystone and Anthem reimbursed Plaintiff only $5,643.97.  The entire amount paid was applied to the patient's liability, leaving her financially responsible for the full amount of $162,334.61.

Dr. Blechman submitted an invoice to Defendant Keystone for $174,200.00.  Defendants reimbursed him $3,220.19, leaving the patient liable for $170,979.81.

After performing the second breast reconstruction surgery on November 19, 2018, Plaintiff Prestige Institute submitted an invoice to Defendant Keystone for $80,590.51.  Defendants reimbursed it $5,663.98. The entire amount paid was applied to the patient's liability, leaving her financially responsible for the full amount, leaving the patient liable for $80,590.51.

In all, Plaintiffs billed Keystone $417,125.13.  Defendants reimbursed Plaintiffs $17,748.24, leaving an unreimbursed amount of $399,376.89.  Defendants paid 3% of the patient's total financial liability for post-mastectomy breast reconstruction.

For the first-stage breast reconstruction surgery, Plaintiffs performed a highly specialized surgical procedure called DIEP (deep inferior epigastric perforator breast reconstruction

procedure). Am. Compl. ¶ 31. This surgery could only be performed by fellowship-trained microsurgeons. One- and two-year fellowship training is post-residency and beyond Board certification. *Id.*

Plaintiff Prestige Institute submitted an appeal (called a "grievance" under the Plan). Defendant Anthem denied this grievance on January 15, 2019.  Am. Compl. ¶¶ 39-40. Since there was one required level of grievance under the Plan, Plaintiff Prestige Institute exhausted its administrative remedies.[2]

Plaintiff Blechman submitted a grievance on April 18, 2019.  Defendants paid an additional amount of $3,220.10 but otherwise upheld its reimbursement determination. Am. Compl. ¶ 49.

Plaintiff Prestige Institute submitted two grievances concerning the under-reimbursement of the November 19, 2018 surgery.  Defendants ignored these grievances, evidencing futility, which Defendants do not challenge.

In responding to Plaintiffs' grievances, Defendant Anthem stated that it had based the reimbursement of the claim based on the "maximum allowable amount," which in turn was determined by the local plan – Defendant Keystone.  Am. Compl. ¶ 40.

Plaintiffs' claims were processed under the Blue Card Program. Am. Compl. ¶ 25.  Under the Blue Card Program, Defendant Keystone was the Host Plan and Defendant Anthem was the Home Plan. The BCBS insurer located in the allocated geographical market area where the member is enrolled is referred to as the Home Plan. Keystone was the Host Plan because Plaintiff's medical services were provided to the patient in Keystone's allocated geographical market area. Anthem was the Home Plan because the patient was enrolled in Anthem's allocated geographical market area.  Compl. ¶¶ 16-25.

---

[2] Defendants do not challenge exhaustion.

The Amended Complaint alleges that Plaintiffs' claims were not simply out-of-network. They were also out of area, meaning that they were out of Defendant Anthem's allocated geographical market area. The Plan prescribes special rules for out-of-area out-of-network provider claims, that differ in this case from in-area out-of-network claims. Out-of-area provider claims are not reimbursed under the Plan based on the maximum allowed amount. Am. Compl. ¶ 42.[3]

The Plan states that such claims are reimbursed based on the Host Blue's pricing or "the pricing arrangements required by applicable state law," or billed charges, or a negotiated amount. (Doc. 24-5, at 127-128). The Amended Complaint alleges that Defendants did not reimburse Plaintiffs their billed charges under the terms of the Plan, did not negotiate with Plaintiffs, nor did Defendants reimburse Plaintiffs pursuant to the statutory terms of the WHCRA. Am. Compl. ¶ 42.[4]

The WHCRA provides, at 29 U.S.C. § 1185b, in pertinent part:

(a) **In general.** A group health plan . . . shall provide, in case of a participant or beneficiary who is receiving benefits in connection with a mastectomy and who elects breast reconstruction in connection with such mastectomy, coverage for –

(1) all stages of reconstruction of the breast on which mastectomy has been performed . . . in a manner determined in consultation with the attending physician and the patient.  Such coverage may be subject to annual deductibles and coinsurance provisions as may be deemed appropriate and as are consistent with those established for other benefits under the plan or coverage . . .

(c)     **Prohibitions.**  A group health plan, and a health insurance issuer offering group health insurance coverage in connection with a group health plan, may not –

---

[3] Defendant Keystone concedes that Plaintiffs were reimbursed based on the in-area out-of-network rates, not the out-of-area rates. Keystone Br. at 7.

[4] Even if, *arguendo*, Defendants were required to reimburse Plaintiffs based on the "Host Blue's nonparticipating provider local payment," the Amended Complaint alleges that Defendants have never disclosed what this amount was or its methodology, in violation of ERISA. 29 C.F.R. § 2560.503-1(g).

> (2) penalize or otherwise reduce or limit the reimbursement of an
> attending provider,
>
> (d) **Rule of construction.** Nothing in this section shall be construed to prevent
> a group health plan or a health insurance issuer offering group health insurance
> coverage from negotiating the level and type of reimbursement with a provider for
> care provided in accordance with this section.

The structure of this statute is straightforward. 29 U.S.C. § 1185b(a) requires that post-mastectomy breast reconstruction surgery be *covered*. 29 U.S.C. § 1185b(c) prohibits any restrictions or limitations on the *reimbursement rate* for this type of surgery, whether performed by an in-network surgeon or an out-of-network surgeon, as compared to other types of surgery where a plan or insurer may reimburse based on an out-of-network reimbursement methodology. However, 29 U.S.C. § 1185b(d), provides an exception to the strict requirement of 29 U.S.C. § 1185b(c): the plan or insurer may negotiate a lower reimbursement amount with the provider.

The Amended Complaint alleges that Defendants did not provide reimbursement for the breast reconstruction procedures pursuant to the WHCRA. Am. Compl. ¶ 35. It also alleges that Defendants did not negotiate a reduced reimbursement rate with Plaintiffs. Am. Compl. ¶ 28.

Patient HG assigned her payments to Dr. Tamburrino. The Assignment stated, in pertinent part:

> I hereby assign and convey to the fullest extent permitted by law any and all benefit
> and non-benefit rights (including the right to any payments) under my health
> insurance policy or benefit plan to Dr. Joseph Tamburrino . . . with respect to . . .
> bring any appeal, lawsuit, or administrative proceeding, for and on my behalf, in
> my name against any person and/or entity involved in the determination of benefits
> under any insurance policy or benefit plan.

Am. Compl. ¶ 58.

Patient HG assigned her payments to Dr. Blechman. The Assignment stated, in pertinent part:

> I hereby assign and convey to the fullest extent permitted by law any and all benefit and non-benefit rights (including the right to any payments) under my health insurance policy or benefit plan to Keith M. Blechman [and] Dr. Keith M. Blechman, M.D., P.C. . . . with respect to . . . bring any appeal, lawsuit, or administrative proceeding, for and on my behalf, in my name against any person and/or entity involved in the determination of benefits under any insurance policy or benefit plan.

Am. Compl. ¶ 59.

Plaintiffs received Designations of Authorized Representative from Patient HG.  They stated, in relevant part:

> I hereby appoint as a Designated Authorized Representative each of my Providers and . . . lawyers (including the Law Offices of Cohen and Howard) . . . [including the] right of my Authorized Representative to pursue . . . litigation or otherwise under any Federal or State law with respect to payment for services provided by a Provider to me, including penalties, interest, and attorney fees.

Am. Compl. ¶ 60.[5]

The Amended Complaint alleges that the Plan does not contain an anti-assignment provision. The assignment language in the Plan states as follows:

> Any assignment of benefits, even if assignment includes the providers [sic] right to receive payment, is generally void.  *However, there are certain situations in which an assignment of benefits is permitted.* For example, if you go to a participating provider that is a hospital or facility at which, or as a result of which, you receive covered non-emergency services from a non-participating provider . . . an assignment of benefits to such non-participating provider will be permitted.

(Doc. 24-5, at 131).

---

[5] Defendant Anthem states incorrectly that Plaintiffs "bring this lawsuit in a direct capacity as alleged assignees of the Patient's benefits, and in a derivative capacity as the Patient's 'Authorized Representative.'" Anthem Br. at 4.  As assignees Plaintiffs bring this action derivatively and as Authorized Representatives bring this action directly on behalf of the patient.

### III.  **ARGUMENT**

#### A.  **Standard of Review**

Fed. R. Civ. P. 12(b)(6) permits the court to dismiss a complaint only if a plaintiff fails to state a claim upon which relief can be granted.  The moving party bears the burden of showing that no claim has been stated.  *Rizzo-Rupon v. Int'l Ass'n of Machinists & Aero. Workers*, 2019 U.S. Dist. LEXIS 215871, *3 (D.N.J. Dec. 16, 2019).  The court must take all allegations in the complaint and treat them as true and view them in the light most favorable to the plaintiff.  *Warth v. Seldin*, 422 U.S. 490, 501 (1975).  Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Rizzo-Rupon*, 2019 U.S. Dist. LEXIS 215871, *3 (quoting *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Atlas Acquisitions, LLC v. Porania, LLC*, 2019 U.S. Dist. LEXIS 200564, *3-4 (D.N.J. Nov. 19, 2019); *Valdes v. Century 21 Real Estate, LLC*, 2019 U.S. Dist. LEXIS 182616, *3 (D.N.J. Oct. 22, 2019).

#### B.  **Plaintiffs Have Standing as Assignees**

Defendants recognize that the Third Circuit permits a provider to obtain derivative standing under ERISA as an assignee of benefits from her patient.  *N. Jersey Brain & Spine Ctr. v. Aetna*, 801 F.3d 369 (3d Cir. 2015); *CardioNet, Inc. v. Cigna Health Corp*., 751 F.3d 165, 176 n.10 (3d Cir. 2014).  While unambiguous anti-assignment provisions are enforceable, assignment provisions – as is the case here – are enforceable as well.

The controlling provision in the Plan is not an anti-assignment provision.  It is an assignment provision under the facts of this case.  It states as follows:

> Any assignment of benefits, even if assignment includes the providers [sic] right to receive payment, is generally void. *However, there are certain situations in which an assignment of benefits is permitted.* For example, if you go to a participating provider that is a hospital or facility at which, or as a result of which, you receive covered non-emergency services from *a non-participating provider . . . an assignment of benefits to such non-participating provider will be permitted.*

(Doc. 24-5, at 131) (emphasis added).

The Amended Complaint alleges that the patient went to a participating hospital.  Am. Compl. ¶ 64.  It further alleges that the patient received non-emergency services from a non-participating provider.  *Id.*  Pursuant to the assignment provision, "an assignment of benefits to such non-participating provider will be permitted."  There was no anti-assignment provision under the Plan.

### C.      Plaintiffs Have Standing Via a Power of Attorney

Defendant Anthem concedes that the Amended Complaint alleges standing via a Power of Attorney. *Am. Orthopedic & Sports Med. v. Independence Blue Cross Blue Shield*, 890 F.3d 445, 454 (3d Cir. 2018).[6]  The Third Circuit noted that assignments and powers of attorney differ in fundamental respects.  An assignment transfers ownership of a claim to an assignee.  A power of attorney does not transfer ownership; it confers on an agent the authority to act on behalf of a principal.  *Id.* Significantly, a health insurer has no more power to strip someone's ability to act as an agent of a plan member pursuant to a power of attorney that it does to strip the plan member of her own interest in her benefits claim. *Id.*

Defendant Anthem suggests that *American Orthopedic* should be confined to its alleged facts, that is, an incapacitated or unavailable patient. There is no basis to do so and nothing in

---

[6] If the Court holds that the Plan does not have an enforceable anti-assignment provision under the alleged facts of this case, it need not proceed with the remainder of the other sources of ERISA standing discussed in sections C and D.

*American Orthopedic* is limited to incapacity or unavailability. Individuals execute Powers of Attorney for a multitude of reasons and they are not uniform: they must grant specific rights and may withhold other rights.

Defendant Anthem's contention that the action must be filed in the name of the principal and not the agent (and for the principal's benefit), and that it was not, is without merit. The caption of this case is: "Prestige Institute for Plastic Surgery, P.C. and Keith M. Blechman, M.D., P.C., on behalf of Patient HG." The action is brought "on behalf of" the patient. In addition, the Amended Complaint alleges that the unpaid benefits were the financial responsibility of the patient, and that Defendants were obligated to pay the patient. Am. Compl. ¶¶ 34, 54 67 ("Defendants' decision to assess *the patient* $399,376.89 in out-of-pocket costs for breast reconstruction surgeries that must be covered was not a coverage decision. It was, instead, a decision, forcing *Patient* HG to self-insure *her own* breast reconstruction surgery, in violation of the WHCRA.") (emphasis added), 76 ("Defendant Keystone is obligated to pay benefits to the *Plan participant* in accordance with the Plan's EOC [Evidence of Coverage], and in accordance with ERISA") (emphasis added), 83 ("Defendant Anthem is obligated to pay benefits to the Plan participant in accordance with the Plan's EOC, and in accordance with ERISA").

### D. Plaintiffs Have Standing under ERISA as Designated Authorized Representatives

Plaintiffs received Designations of Authorized Representative from Patient HG, designations specifically authorized by ERISA rulemaking that cannot be contractually excluded and must be included in every insurance plan. 29 C.F.R. § 2560.503-1(b)(4).

Defendants claim that a Designated Authorized Representative is limited to internal appeals. However, the patient's authorized representative is also entitled to pursue available remedies under ERISA § 502(a)(1)(B) on behalf of the patient. Authorized representatives must

sue "on behalf of" patients, and only assignees may file suit in their own name. *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1143 (C.D. Cal. 2015). Plaintiffs sue on behalf of Patient HG.  Available remedies include litigation. *See* 80 Fed. Reg. 72266 (Nov. 18, 2015) (permitting litigation).[7]

"ERISA regulations require that an employee benefit plan's 'claims procedures do not preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination.'"  *Outpatient Specialty Surgery Partners, Ltd. v. UnitedHealth Ins. Co.*, 2016 U.S. Dist. LEXIS 82312 (S.D. Tex. June 24, 2016). Payments to patients' authorized representatives are payments to patients themselves and do not implicate a plan's anti-assignment clause. *Omega Hosp., LLC. v. United Healthcare Servs.*, 345 F. Supp. 3d 712, 731 (M.D. La. 2018).

The United States Supreme Court made clear that ERISA must be interpreted uniformly and must not vary state by state on the basis of each jurisdiction's law. *Egelhoff v. Egelhoffex rel Breiner*, 532 U.S. 141, 149 (2001).  ERISA is to be interpreted in light of "federal common law" and in a manner that furthers "ERISA's purposes." *Estate of Kensinger v. URL Pharma, Inc*., 674 F.3d 131, 135 (3d Cir. 2012).

---

[7] Defendants' citation to *MBody Minimally Invasive Surgery  v. Empire Healthchoice HMO, Inc.*, 2016 U.S. Dist. LEXIS 66149 (S.D.N.Y. May 19, 2016), is inapposite.  In *MBody Minimally Invasive Surgery*, the court noted that the "plaintiffs fail to explain how their purported status as "authorized representatives" under this regulation is distinguishable from their theory that they are proper assignees of their patients' Claims." In *Prof'l Orthopedic Associates, P.A. v. Excellus Blue Cross Blue Shield*, 2015 U.S. Dist. LEXIS 91815 (D.N.J. July 15, 2015), the plaintiff did not point to a "Designation of Authorized Representative" form or to any rulemaking authority. In this case, 29 C.F.R. § 2560.503-1(b)(4) and the allegation that the patient designated Plaintiff as the Authorized Representative, Am. Compl. ¶ 60, distinguishes both cases. Contrary to Defendant's statement, a Designation of Authorized Representative is enforceable and cannot be contractually waived.

The issue of uniformity was resolved in the interpretation of the assignment provision itself.   Health insurers and plans argued that assignments of benefits were limited to internal appeals and not to federal litigation under ERISA –the identical argument Defendants make with respect to the Designation of Authorized Representative form in this case.

The Third Circuit – and virtually every other circuit court – rejected this cramped reading. In *CardioNet, Inc. v. Cigna Health Corp*., 751 F.3d 165, 176 n.10 (3d Cir. 2014), the Third Circuit adopted the majority position on the issue of standing-by-assignment. *See I.V. Servs. of Am. v. Trustees of the Am. Consulting Eng'rs Council Ins. Fund*, 136 F.3d 114, 117 n.2 (2d Cir. 1998) ("assignees of beneficiaries to an ERISA-governed insurance plan have standing to sue under ERISA").

Courts understood that without standing to sue under ERISA, any purported rights could not be enforced and would be rendered illusory.  *Conn. State Dental Ass'n v. Anthem Health Plans, Inc*., 591 F.3d 1337, 1352-53 (11th Cir. 2009). *I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc.,* 7 F. Supp. 2d 79, 84 (D. Mass. 1998) ("An assignment to receive payment of benefits necessarily incorporates the right to seek payment.  As Plaintiff argues, the right to receive benefits would be hollow without such enforcement capabilities."); *Wayne Surgical Ctr., LLC v. Concentra Preferred Sys.,* 2007 U.S. Dist. LEXIS 61137, at *12 (D.N.J. Aug. 20, 2007) ("[T]his Court …finds that it is illogical to recognize that [a provider] as a valid assignee has a right to receive the benefit of direct reimbursement from its patients' insurers but cannot enforce this right."); *Gregory Surgical Services, LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, 2007 U.S. Dist LEXIS 94056, at * 7-8, n.1 (D. N.J. December 26, 2007) ("[A]n assignment of benefits under a plan includes the assignment of the right to sue for such benefits, for without the latter, the former

would be unenforceable."). Even where monies are paid to the patient, the patient must then forward these monies to the provider.

The Court should treat the Designation of Authorized Representative the same under Third Circuit law as an assignment (although it does not come under any anti-assignment provision) for purposes of recognizing standing under ERISA. The Designation of Authorized Representative should not be limited to internal appeals for the same reason that assignments have been held as not so limited: it would make it "unnecessary for health care providers to evaluate the solvency of patients before commencing medical treatment," and it would eliminate "the necessity for beneficiaries to pay potentially large medical bills and await compensation from the plan." *Misic v. Bldg. Serv. Emps. Health & Welfare Trust*, 789 F.2d 1374, 1377 (9th Cir. 1986).

Recognition of the Designation of Authorized Representative as encompassing litigation on behalf of the patient in order to enforce the patient's appellate rights would not undo anti-assignment provisions. The two are fundamentally different. An Authorized Representative is not an assignee. She does not own the plan benefits because they have not been assigned to her. She does not maintain an action in her own name, but on behalf of the patient she represents. The action always belongs to the patient, the Plan member.

To hold that a Designation of Authorized Representative only applies to internal appeals gives every incentive to insurers and plans to deny internal appeals, knowing that only a plan member may bring an ERISA action – the person least able to maintain an action individually and financially, find and pay qualified counsel, and assist in trying the case, especially since the member may also be ill from the symptoms of the disease underlying her claim or recuperating

from surgery, or who may have died for this illness.[8] Since this is true, out-of-network providers will no longer be able to provide medical services to low- and middle-income families who cannot pay the entire medical bill upfront, only the wealthy: a two-tiered medical system – the wealthiest Americans (who do not need health insurance since they can self-pay), and everyone else. *Misic*, 789 F.2d at 1377.[9]   The majority of Americans with insurance will be forced to go to in-network providers, even when they pay extra premiums for out-of-network coverage, which become illusionary. When in-network providers cannot perform the specific surgical procedures required because they are unqualified to do so (as in breast reconstruction DIEP surgery), plan members will not have the surgery they are entitled to have under their plans.   After all, there is no requirement under New Jersey state law or elsewhere that Defendant Anthem must have in-network breast reconstruction providers at all, much less those specializing in the DIEP microsurgical procedure. Plan members will either not receive optimum medical care or will forgo care entirely. That is what is at stake here.[10]

---

[8] Should a member die prior to or during the pendency of a claim for ERISA benefits, an authorized representative, including, ostensibly, the patient's provider, may sue on the member's behalf.  This begs the question of why an authorized representative must await the member's death to act in the best interest of the member.

[9] Insurers often serve counterclaims or recoupment actions against plan members who sue to discourage them from continuing with their litigation.  Since these actions cannot be defended on a contingent basis, this is an effective tactic against patients with limited financial means.

[10] Defendant Anthem includes what appears to be an excerpt from an oral argument in a case (it does not provide the transcript) in which Judge Kugler states that if out-of-network doctors could get paid a hundred percent no one would become an in-network doctor and insurance premiums would rise. All of this is outside the pleadings (especially the speculation about rising insurance premiums – because insurance premiums are not based on the mere existence of out-of-network providers but on numerous factors involved in medical underwriting, including the amount of deductibles and co-pays, and why actuaries are employed by insurers *and* state departments of insurance to determine rate filings), and it cannot be used as the basis to dismiss the Amended Complaint. There are also many reasons why providers do not enter into agreements with insurers. It also has nothing to do with the factual allegations in this case.  As discussed in the Introduction, the Amended Complaint does not allege that Plaintiff should be paid 100% of their billed charges.

### E.     Plaintiffs Have Standing as Beneficiaries

It is well established under ERISA that a "beneficiary" is "a person" designated by a participant, *or* by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(16)(A) (emphasis added).  The disjunction is important. Although ERISA often focuses on an ERISA plan's definition of "participant" and "beneficiary," the statute provides that an ERISA participant may designate someone as a beneficiary.  Once so designated, this beneficiary has the same ERISA rights as the participant, including but not limited to standing under ERISA to maintain a legal claim.

The Amended Complaint alleges that Patient HG, a Plan participant, designated Plaintiffs as beneficiaries.  The language in the Assignment/Designation of Authorized Representative set this out, conveying "all benefit and non-benefit rights (including the right to any payments)" under Patient HG's health insurance policy.

Defendants did not move to dismiss on this ground and made no argument concerning it. As a result, they waived it. *Beccerril v. Spartan Concerte Prods., LLC*, 2020 U.S. App. LEXIS 2472, *8 n.8 (3d Cir. Jan. 27, 2020) (an argument not raised in an opening brief is waived).

### F.     Defendant Keystone is a Proper Defendant

Keystone (but not Anthem), contends that it is not a proper defendant because an ERISA § 502(a)(1)(B) claim is enforceable only against a healthcare plan as an entity or a claims administrator.  The measurement is not based on labels or designation but on function.[11] Defendant Keystone's motion to dismiss on the basis that it is not a proper defendant is without merit.

---

[11]     Defendant Keystone states in its brief that it was not the plan administrator of the Plan. Keystone Br. at 7.  That is true, but then neither was Defendant Anthem because the Plan was fully insured.  There was no plan administrator. Because the Plan was not self-funded, there was no claims administrator.

In *Wolff v. Aetna Life Ins. Co.*, 2020 U.S. Dist. LEXIS 57864, *8 (M.D. Pa. Apr. 2, 2020), the court held that the "proper defendant in a § 502(a)(1)(B) claim is the plan itself or a person who controls the administration of benefits. Exercising control over the administration of benefits is the defining feature of the proper defendant under 29 U.S.C. § 1132(a)(1)(B). Interpreting the terms of ERISA, courts have found that a party exercises control over the administration of benefits if it possesses the final authority to authorize or disallow a claim for benefits under the plan." This authority need not be exclusive. *Evans v. Employee Benefit Plan Comp Dresser & McKee, Inc.*, 311 Fed. App'x., 556, 558 (3d Cir. 2009) ("In a claim for wrongful denial of benefits under ERISA, the proper defendant is the plan itself or a person who controls the administration of benefits under the plan.").

Under the Blue Card Program, Defendants represented that the reimbursement amounts paid to Plaintiffs were based on the local, or Host Plan, meaning Keystone. Notwithstanding Defendant Keystone's contention that the Amended Complaint made no allegation that Keystone "made any decisions as to whether to pay the providers' claims or how much to pay," Keystone Br. at 7, this is false: the Amended Complaint alleges that it was Defendant Keystone that made the reimbursement determinations, which under ERISA § 502(a)(1)(B) makes it a proper defendant. Am. Compl ¶ 42. *See Shah v. Horizon v. Blue Cross Blue Shield of N.J.*, 2018 U.S. Dist. LEXIS 25695, *6 (D.N.J. Feb. 16, 2018) ("Put simply, Plaintiff has plead facts that plausibly establish that Defendant controls the administration of benefits under the plan.").

*Estate of Kenyon v. L&M Healthcare Health Reimbursement Account*, 404 F. Supp. 3d 627 (D. Conn. 2019), cited by Defendant Keystone, is not on point. In that case, the court held that Triple-S did not have discretionary control over appeals, unlike Defendant Keystone here. Instead, "the extent of the estate's allegations outside the scope of the plan are that Triple S 'participated

in and approved the decision-making process and failed to process the appeal of the denial at issue in this matter,' and that Triple-S 'refused to consider the appeal because it did not adjust the original claim'. . . These sorts of conclusory allegations of some partial control do not show Triple-S to have acted as anything approaching even the liberal standard of *de facto* plan administrator." *Id.* at *633-*634.

Finally, the factual issue of Defendant Keystone's discretion over the Plan raises matters outside the pleadings that are cannot be resolved on a motion to dismiss.  *Shah v. Horizon Blue Cross Blue Shield*, 2017 U.S. Dist. LEXIS 23885, *8 (D.N.J. Feb. 21, 2017).

Defendant Keystone's contention that it is not a proper defendant under § 502(a)(1)(B) is without merit.

## G.    The Complaint States A Claim

Defendants also contend that the Complaint should be dismissed because "payments for out-of-network services will *generally* be based on the Plan's out-of-network rate, unless federal or state law requires otherwise." Anthem Br. at 14 (emphasis added).  Defendant Keystone contends that Plaintiffs "fail to identify the plan provision entitling them to relief.  Keystone Br. at 9.  These contentions are meritless.

The Amended Complaint alleges that because the patient's medical services were performed in Defendant Keystone's exclusive allocated market area, they were considered out-of-area with respect to Defendant Anthem.  Am. Compl. ¶ 42. Out-of-area provider claims are not reimbursed under the Plan based on the maximum allowed amount used for out-of-network reimbursement charges.

The Plan states that such claims are reimbursed based on the Host Blue's pricing or "the pricing arrangements required by applicable state law," or billed charges, or a negotiated amount.

(Doc. 24-5, at 127-128).   The Host Blue was Defendant Keystone. Keystone concedes that Plaintiffs were reimbursed based on out-of-network rates, not out-of-area rates. Keystone Br. at 7. Because the Amended Complaint alleges that Defendants violated the terms of the Plan in reimbursing Plaintiffs, this is sufficient to state a claim under ERISA § 502(a)(1)(B).

In addition, the Amended Complaint alleges that the Plan incorporates the WHCRA and its requirement that post-mastectomy breast reconstruction surgical procedures be reimbursed. 29 U.S.C. § 1185b(b). This is the federal law referred to in the Plan. The Plan refers to the WHCRA, and specifies that it "provides benefits," not simply coverage. (Doc. 24-5, at 166). Defendants acknowledge that the WHCRA requires that this type of surgery must be covered, but they ignore that it must also be reimbursed.  The statute, 29 U.S.C. § 1185b, makes this clear:

> (c)   **Prohibitions.**  A group health plan, and a health insurance issuer offering group health insurance coverage in connection with a group health plan, may not –
>
> > (2)  penalize or otherwise reduce or limit the reimbursement of an attending provider

The WHCRA prohibits a health insurance "issuer" (that is, an insurer) from reducing or limiting the reimbursement of an attending provider who performs post-mastectomy breast reconstruction surgery.[12]

This does not mean that the Amended Complaint alleges that Plaintiffs must be reimbursed at "100% of whatever charges Plaintiff [sic] submit." Defendants invent this language. There may be applicable surgical rules that lower the reimbursement rate, such as the multiple surgery rule and co-surgeon rule.  Certain procedures may be encompassed by other procedures but may be separately billed and reimbursed only by billing through the proper CPT code and modifier. When

---

[12] *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614 (2d Cir. 2008), is distinguishable. The plaintiff's claim for reimbursement was confined to the cost-sharing amounts consistent with those of other plans under 29 U.S.C. 1185b(a), and the court had no occasion to make any decision concerning the actual reimbursement amount mandated under 29 U.S.C. 1185b(c).

an insurer applies an appropriate surgical rule that nonetheless reduces the reimbursement amount, providers do not balance bill their patients for this specific reduction.

Contrary to Defendants' contention, the Amended Complaint does not allege that reimbursement amounts should be based on Drs. Tamburrino and Blechman's credentials apart from their qualifications to perform the DIEP procedure. Also left unstated is the fact that the patient may be financially liable for deductibles, co-pays, and co-insurance under the terms of the Plan. Nothing in the out-of-area Plan terms or the WHCRA changes this patient liability.[13]

Defendants' other arguments concerning the WHCRA are equally unavailing. They posit that the WHCRA does not "create a stand-alone cause of action." There is no private right of action under the WHCRA, and there is no need for one. Because the WHCRA is a federal mandate, imposing coverage and benefits for mastectomy and post-mastectomy breast reconstruction procedures on health insurance plans – it may be enforced by ERISA § 502(a)(1)(B).[14]

Defendant Anthem appears to misconstrue the operation of the WHCRA in arguing that this statute does not require a plan to "create any special exceptions" to the amount of its coverage

---

[13] The WHCRA mandates coverage but states that "[s]uch coverage may be subject to annual deductibles and coinsurance provisions as may be deemed appropriate and as are consistent with those established for other benefits under the plan." 29 U.S.C. § 1185b(a).

[14] Defendants' citations are inapposite. In *Atlantic Plastic and Hand Surgery, P.A. v. Anthem Blue Cross and Health Ins. Co.*, 2018 U.S. Dist. LEXIS 47181 (D.N.J. Mar. 22, 2018); and *Atlantic Plastic and Hand Surgery, P.A. v. Anthem Blue Cross and Health Ins. Co.*, 2018 U.S. Dist. LEXIS 186320 (D.N.J. Oct. 31, 2018), the plaintiff alleged the plan failed to pay usual and customary charges but did not allege that the plan actually promised to pay such charges. The same was true in *Univ. Spine Ctr. v. Cigna Health & Life Ins. Co.*, 2018 U.S. Dist. LEXIS 148387 (D.N.J. Aug. 29, 2018) ("No benefit plan term is identified as being violated."); and *Millennium Healthcare of Clifton v. Aetna Life Ins. Co.*, 2019 U.S. Dist. LEXIS 224616 (D.N.J. Nov. 15, 2019) ("Plaintiff fails to allege what the relevant provisions of the Patient's Plan state").

for breast reconstruction.  The WHCRA does not impose more coverage and benefits than the Plan

because the terms of the WHCRA are incorporated into the Plan. 29 U.S.C. § 1185b(b).[15]

### IV.    CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' motions to dismiss the

Amended Complaint.

Dated: April 21, 2020

/s/ Robert J. Axelrod
AXELROD LLP
800 Third Avenue, Suite 2800
New York, NY 10022
(646) 448-5263
rjaxelrod@axelrodllp.com


Michael Fried
AXELROD LLP
354 North Fourth Avenue
Highland Park, NJ 08904
(732) 718-6171
mfried@axelrodllp.com

Leslie S. Howard
COHEN HOWARD LLP
766 Shrewsbury Avenue, Suite 200
Tinton Falls, NJ 07724
(732) 747-5202
lhoward@cohenhoward.com

Attorneys for Plaintiffs Prestige Institute for
Plastic Surgery, P.C. and Keith M.
Blechman, M.D., P.C.

---

[15] Contrary to Defendant Keystone, Plaintiffs did not make a claim pursuant to the "Full and Fair Review" requirements under 29 C.F.R. § 2560-503.1(g). Rather, and as is clearly alleged in the Complaint, they alleged that violation of this rule resulted in "deemed exhaustion."  Compl. ¶ 75.